1    WILSON PETTY KOSMO & TURNER LLP
     ROBIN A. WOFFORD (137919)
2    HUBERT KIM (204957)
     550 West C Street, Suite 1050
3    San Diego, California 92101
     Telephone: (619) 236-9600
4    Facsimile: (619) 236-9669
     E-mail: rwofford@wpkt.com
5    E-mail: hkim@wpkt.com

6    Attorneys for Defendant EQUILON ENTERPRISES LLC
     dba SHELL OIL PRODUCTS US

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   SAMUEL ST. JAMES,                  Case No. 08 CV 0962 J (AJB)

12            Plaintiff,                **DEFENDANT EQUILON
                                        ENTERPRISE LLC'S NOTICE OF
13        v.                            MOTION TO DISMISS COMPLAINT
                                        OR IN THE ALTERNATIVE,
14   EQUILON ENTERPRISES, LLC, dba SHELL MOTION FOR MORE DEFINITE
     OIL PRODUCTS US; CITIGROUP BANK, and STATEMENT**
15   DOES 1 through 20, INCLUSIVE,
                                        **[F.R.C.P. 12(b)(6), 12(e) and 9(b)]**
16            Defendants.
                                        Complaint Filed: April 10, 2008
17
                                        Date:          July 7, 2008
18                                      Time:          10:30 a.m.
                                        District Judge: Hon. Thomas J. Whelan
19                                      Magistrate Judge: Hon. Anthony J. Battaglia
                                        Trial Date:    Not Set
20
                                        **[No Oral Argument Per Local Rules]**
21

22

23        **TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

24        **PLEASE TAKE NOTICE** that on July 7, 2008, at 10:30 a.m. or as soon thereafter as the

25   matter may be heard in the above-entitled court located at 880 Front Street, San Diego, California,

26   Defendant Equilon Enterprises LLC, dba Shell Oil Products US ("Equilon") will and hereby does

27   move this Court to: (1) dismiss Plaintiff's Second, Third, Fifth, Seventh, Ninth, Tenth, Eleventh and

28   Twelfth Causes of Action as set forth in Plaintiff Samuel St. James' Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and (2) dismiss Plaintiff's Sixth and Eighth Causes of Action for failure to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). Alternatively, if the Court does not dismiss Plaintiff's Second Cause of Action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, Equilon will and does hereby move the Court for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

This motion is based upon the following grounds:

1. Plaintiff's Second Cause of Action entitled "Bad Faith Breach of Contract" is subject to dismissal because (1) Plaintiff does not allege facts indicating Equilon breached any agreement, (2) Plaintiff cannot allege a claim for breach of the duty of good faith and fair dealing under Texas law and (3) Plaintiff has failed to allege facts support a claim that the provisions of the parties' agreement were unconscionable. As such, Plaintiff has failed to state a claim upon which relief can be granted and the claim should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). In the event that Plaintiff's Second Cause of Action is not dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), then Equilon is entitled to a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) as Plaintiff's vague factual allegations make it impossible for Equilon to frame a responsive pleading.

2. Plaintiff's Third Cause of Action entitled "Unjust Enrichment" is subject to dismissal as the unjust enrichment doctrine is not applicable where a valid express contract governs the dispute or where Plaintiff's allegations contradict the express language of the Agreement. As such, Plaintiff has failed to state a claim upon which relief can be granted and the claim should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

3. Plaintiff's Fifth Cause of Action ("Constructive Trust Arising From Breach of Fiduciary Duty") and Seventh Cause of Action ("Constructive Fraud/Breach of Fiduciary Duty") are subject to dismissal as Plaintiff cannot allege facts to support the existence of a fiduciary relationship between Plaintiff and Equilon where such allegations directly contradict the terms of the parties' agreement which Plaintiff seeks to enforce. As such, Plaintiff has failed to state a claim upon which

relief can be granted and these claims should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

4.    Plaintiff's Sixth Cause of Action ("Fraud and Request for Constructive Trust") and Eighth Cause of Action ("Negligent Misrepresentation") are subject to dismissal because Plaintiff has failed to plead these fraud claims with the specificity required by Federal Rule of Civil Procedure 9(b).

5.    Plaintiff's Ninth Cause of Action entitled ("Negligence") is subject to dismissal as Plaintiff's claim is precluded under Texas law as it is duplicative of his contract claims.  As such, Plaintiff has failed to state a claim upon which relief can be granted and the claim should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

6.    Plaintiff's Tenth Cause of Action entitled ("Breach of a Resulting Trust") is subject to dismissal because it is dependent upon the viability of his Fifth and Seventh Causes of Action, which must be dismissed because Plaintiff cannot allege facts to support the existence of a fiduciary relationship between Plaintiff and Equilon.  As such, Plaintiff has failed to state a claim upon which relief can be granted and the claim should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

7.    Plaintiff's Eleventh Cause of Action entitled "Interference With Prospective Business Advantage" is subject to dismissal because Plaintiff improperly alleges that Equilon interfered with its own contract with Plaintiff.  As such, Plaintiff has failed to state a claim upon which relief can be granted and the claim should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

8.    Plaintiff's Twelfth Cause of Action entitled "Unfair Business Practice" is subject to dismissal because the Deceptive Trade Practices-Consumer Protection Act (Tex. Bus & Commerce Code §17.41, *et seq*.) does not apply to the conduct alleged by Plaintiff.  As such, Plaintiff has failed to state a claim upon which relief can be granted and the claim should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is made and based on this Notice of Motion, the Memorandum of Points and Authorities attached hereto, the pleadings and records on file with this Court, those matters for

which Equilon has sought the Court to take judicial notice as reflected in the accompanying Request

for Judicial Notice in support of this Motion, and on such oral and documentary evidence as may be

presented at the hearing of this Motion.


Dated:      June 6, 2008                          **WILSON PETTY KOSMO & TURNER LLP**


                                        By:      _____/s/  Robin A. Wofford_____
                                                Robin A. Wofford
                                                Hubert Kim
                                                Attorneys for Defendant
                                                EQUILON ENTERPRISES LLC DBA
                                                SHELL OIL PRODUCTS US

1  WILSON PETTY KOSMO & TURNER LLP
   ROBIN A. WOFFORD (137919)
2  HUBERT KIM (204957)
   550 West C Street, Suite 1050
3  San Diego, California 92101
   Telephone: (619) 236-9600
4  Facsimile: (619) 236-9669
   E-mail: rwofford@wpkt.com
5  E-mail: hkim@wpkt.com

6  Attorneys for Defendant EQUILON ENTERPRISES LLC
   dba SHELL OIL PRODUCTS US

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  SAMUEL ST. JAMES,                    Case No. 08 CV 0962 J (AJB)

12              Plaintiff,               **DEFENDANT EQUILON
                                         ENTERPRISES LLC'S
13         v.                            MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT OF
14  EQUILON ENTERPRISES, LLC, dba SHELL  MOTION TO DISMISS COMPLAINT
    OIL PRODUCTS US; CITIGROUP BANK, and OR IN THE ALTERNATIVE,
15  DOES 1 through 20, INCLUSIVE,        MOTION FOR MORE DEFINITE
                                         STATEMENT**
16              Defendants.
                                         **[F.R.C.P. 12(b)(6), 12(e) and 9(b)]**
17
                                         Complaint Filed: April 10, 2008
18
                                         Date:            July 7, 2008
19                                       Time:            10:30 a.m.
                                         District Judge:  Hon. Thomas J. Whelan
20                                       Magistrate Judge: Hon. Anthony J. Battaglia
                                         Trial Date:      Not Set
21
                                         **[No Oral Argument Per Local Rules]**
22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND .................................................................2

III.   PROCEDURAL BACKGROUND..........................................................2

IV.   LEGAL STANDARD .............................................................................3

V.   ARGUMENT ..........................................................................................3

    A.   TEXAS LAW GOVERNS THIS DISPUTE. .........................................3

        1.   Under California Law, The Parties' Choice of Law Provision Is Valid......................................................................................4

        2.   The Choice of Law Provision Applies To The Entire Complaint. ..............5

    B.   PLAINTIFF FAILS TO STATE A CLAIM FOR BAD FAITH BREACH OF CONTRACT. ...................................................................5

        1.   Under Texas Law, Plaintiff May Not Assert A Claim For Breach Of The Duty of Good Faith and Fair Dealing In The Context Of This Lawsuit...............................................................................6

        2.   Plaintiff Has Failed To Sufficiently Allege The Agreement Was Unconscionable.......................................................................7

    C.   IN THE EVENT THE COURT ELECTS NOT TO DISMISS PLAINTIFF'S SECOND CAUSE OF ACTION IN ITS ENTIRETY, THE COURT SHOULD ORDER A MORE DEFINITE STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(e)...................7

    D.   PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ......................................................................................9

    E.   PLAINTIFF'S FRAUD CLAIMS ARE NOT PLEAD WITH SUFFICIENT SPECIFICITY AND REQUIRE DISMISSAL. ...........................10

        1.   Plaintiff Has Failed To Plead His Fraud Claim With Requisite Particularity.........................................................................10

        2.   Plaintiff Has Failed To Plead His Negligent Misrepresentation Claim With Particularity...............................................................11

    F.   PLAINTIFF'S FIFTH AND SEVENTH CAUSES OF ACTION FAIL TO STATE A CLAIM AS PLAINTIFF CANNOT ALLEGE A BREACH OF FIDUCIARY DUTY ...................................................................12

        1.   Plaintiff's Fifth Cause of Action Must Be Dismissed As The Parties' Agreement Specifically States No Partnership Was Formed. ........................................................................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EQUILON ENTERPRISES LLC'S MOTION TO DISMISS COMPLAINT

2.    Plaintiff's Seventh Cause of Action Must Be Dismissed. .........................13

G.    PLAINTIFF'S TENTH CAUSE OF ACTION FOR BREACH OF A RESULTING TRUST MUST BE DISMISSED. ....................................................14

H.    PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE. .......................14

I.    PLAINTIFF FAILS TO STATE A CLAIM FOR INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE. ............................................15

J.    PLAINTIFF FAILS TO STATE A CLAIM FOR UNFAIR BUSINESS PRACTICE. ..........................................................................................................16

VI.    CONCLUSION .........................................................................................................17

Case No.  08 CV 0962 J (AJB)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EQUILON ENTERPRISES LLC'S MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Bell Atl. Corp. v. Twombly*
   ___ U.S. ___, 127 S.Ct. 1955 (2007)...................................................................3

*Klaxon Co. v. Stentor Elec. Mfg.*
   313 U.S. 487 (1941)...................................................................................................4

*Albrecht v. Lund*
   845 F.2d 193 (9th Cir. 1988) ...................................................................................3

*Balisteri v. Pacifica Police Dept.*
   901 F.2d 696 (9th Cir. 1988). ..................................................................................3

*Desaigoudar v. Meyercord*
   223 F.3d 1020 (9th Cir. 2000). ...............................................................................10

*General Signal Corp. v. MCI Telecommunications Corp.*
   66 F.3d 1500 (9th Cir 1995). ...................................................................................5

*GlenFed, Inc. Secur. Litig.*
   42 F.3d 1541 (9th Cir. 1994) (en banc). ...............................................................11

*North Star Int'l v. Arizona Corp. Comm'n*
   720 F.2d 578 (9th Cir. 1983) ...................................................................................3

*Patton v. Cox*
   276 F.3d 493 (9th Cir. 2002). ..................................................................................4

*Semegen v. Weidner*
   780 F.2d 727 (9th Cir. 1985). ................................................................................10

*Verifone Sec. Litig.*
   11 F.3d 865 (9th Cir. 1993) .....................................................................................3

*Walker Distributing Co. v. Lucky Lager Brewing Co.*
   323 F.2d 1 (9th Cir. 1963), *cert. denied*, 385 U.S. 976 (1964)..............................3

*Harris v. Sentry Title Co., Inc.*
   715 F.2d 941 (5th Cir. 1983). ................................................................................14

*Williams v. United Credit Plan, Inc.*
   526 F.2d 713 (5th Cir. 1976). ..................................................................................8

*Gulf Coast Western Oil Co., Inc. v. Trapp*
   165 F.2d 343 (10th Cir. 1947). .................................................................................8

*Family Golf Centers, Inc. v. Acushnet Co.*
   290 B.R. 55 (S.D.N.Y. 2003)....................................................................................8

**State Cases**

<u>California</u>
*Discover Bank v. Super. Ct.*
    36 Cal. 4th 148 (2005) ..........................................................................4
*Nedlloyd Lines B.V. v. Super. Ct.*
    3 Cal.4th 459 ...............................................................................4, 5

*Application Group, Inc. v. Hunter Group, Inc.*
    61 Cal.App.4th 881 (1998) ...................................................................5
*Hughes Elecs. Corp. v. Citibank Delaware*
    120 Cal.App.4th 251 (2004) ................................................................4


<u>Texas</u>
*Amstadt v. U.S. Brass Corp.*
    919 S.W.2d 644 (Tex. 1996) ..............................................................17
*Arnold v. Nat'l County Mut. Fire Ins. Co.*
    725 S.W.2d 165 (Tex. 1987) ................................................................6
*Eagle Properties, Ltd. v. Scharbauer*
    807 S.W.2d 714 (Tex. 1990) ..............................................................11
*Holloway v. Skinner*
    898 S.W.2d 793 (Tex. 1995) ..............................................................16
*Jim Walter Homes, Inc. v. Reed*
    711 S.W.2d 617 (Tex. 1986) ..............................................................15
*Southwestern Bell Tel. Co. v. DeLanney*
    809 S.W.2d 493 (Tex. 1991) .........................................................12, 15
*Thigpen v. Locke*
    363 S.W.2d 247 (Tex. 1962) ..............................................................12

*Adolph Coors Co. v. Rodriguez*
    780 S.W.2d 477 (Tex. App. 1989).........................................................6
*Burlington N. R.R. v. Sw. Elec. Power Co.*
    925 S.W.2d 92 (Tex. App. 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998)..............10
*Central Sav. & Loan Ass'n v. Stemmons N.W. Bank, N.A.*
    848 S.W.2d 232 (Tex. App. 1992).........................................................6
*Cole v. Hall*
    864 S.W.2d 563 (Tex. App. 1993).........................................................6
*Fondren Constr. Co., Inc. v. Briarcliff Housing Dev. Assocs., Inc.*
    196 S.W.3d 210 (Tex. App. 2006).......................................................11
*Lone Star Steel Co. v. Scott*
    759 S.W.2d 144 (Tex. App. 1988).........................................................9
*Lovell v. Western Nat'l Life Ins. Co.*
    754 S.W.2d 298 (Tex. App. 1988).........................................................6
*Todd v. Perry Homes*
    156 S.W.3d 919 (Tex. App. 2005).......................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EQUILON ENTERPRISES
LLC'S MOTION TO DISMISS COMPLAINT

**Federal Statutes**

Federal Rule of Civil Procedure 9 ..................................................................1, 10, 11, 12

Federal Rule of Civil Procedure 12 ...................................................................1, 3, 7, 8

**Texas Statutes**

Bus & Commerce Code §17.41, *et seq.* .......................................................................17

Case No.  08 CV 0962 J (AJB)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EQUILON ENTERPRISES LLC'S MOTION TO DISMISS COMPLAINT

# I.

## **INTRODUCTION**

This action involves a dispute over the termination of an independent contractor relationship between Plaintiff Samuel St. James' ("Plaintiff") and Defendant Equilon Enterprises LLC, dba Shell Oil Products US ("Equilon").  Specifically, Plaintiff sold Shell Fleet Credit Cards to corporate customers pursuant to a written agreement between the parties.  Plaintiff was compensated for his sales via a commission per market for each gallon of fuel sold.  Defendant Citibank (South Dakota), N.A., erroneously sued as "Citibank Group" ("Citibank"), issued the Shell Fleet Credit Cards, processed the fleet card applications and sales transactions and provided sales data to Equilon from which Plaintiff's commissions were calculated.  Effective May 31, 2007 pursuant to the express terms of the agreement between the parties Equilon terminated the agreement and paid Plaintiff the three months compensation to which he was entitled pursuant to Paragraph 3 of the agreement.  Almost a year later  Plaintiff filed this action against Equilon and Citibank for : 1) Breach of contract; 2) Bad Faith Breach of Contract; 3) Unjust Enrichment; 4) Declaratory Relief; 5) Constructive Trust; 6) Fraud and Request for Constructive Trust; 7) Constructive Fraud / Breach of Fiduciary Duty; 8) Negligent Misrepresentation; 9) Negligence; 10) Breach of a Resulting Trust; 11) Interference with Prospective Business Advantage, and ; 12) Unfair Business Practices.

The claims are supported by neither fact nor law and many are nonsensical.  Indeed, most of Plaintiff's theories directly contradict the express terms of the integrated contract he identifies as exhibit A to the Complaint.  Accordingly, Equilon moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Second, Third, Fifth, Seventh, Ninth, Tenth, Eleventh and Twelfth Causes of Action contained within Plaintiff Samuel St. James' ("Plaintiff") Complaint for failure to state a cause of action.  Alternatively, in the event the Court determines it is not appropriate to dismiss Plaintiff's Second Cause of Action, Equilon requests this Court grant its motion to order Plaintiff to provide a more definite statement under Federal Rule of Civil Procedure 12(e).  Finally, Equilon further moves the Court to dismiss Plaintiff's Sixth and Eighth Causes on the basis that Plaintiff has failed to plead his fraud-based claims with the specificity required under Federal Rule of Civil Procedure 9(b).

## II.

## FACTUAL BACKGROUND

On or around February 24, 2005, Equilon and Plaintiff entered into a fully integrated Contractor Agreement, effective March 1, 2005 (the "Agreement"), which expressly superseded the parties' prior agreements. *See* Request for Judicial Notice ("RJN"), Exhibit 1, Contractor Agreement dated March 1, 2005 at Preamble and ¶ 20 (hereinafter "Agreement"); Complaint ¶¶ 2-3. The Agreement specified that Plaintiff was to provide Fleet Card Solicitation Services in the following California Markets:  Los Angeles County, San Bernardino, High Desert, Riverside, Ventura County, Santa Barbara, San Louis Obispo, Orange County and San Diego. *Id.* at ¶ 1.  In exchange for his services, Plaintiff was to receive a commission per market of $.03 per gallon tied to Plaintiff's sales code provided by Citibank. *Id.* at ¶ 5(a).  The term of the Agreement was one year beginning with the effective date of March 1, 2005, but was to be automatically renewed for successive one year terms, unless terminated under the provisions of the Agreement. *Id.* at ¶ 2.  In particular, either party could "terminate this Agreement either in its entirety or for a particular Market, **at any time and for any reason or no reason at all**, by giving the other at least two (2) days advance written notice." *Id.* at ¶ 2 (emphasis added).  The Agreement allowed Equilon to terminate the Agreement in one or all markets without cause provided Equilon pay Plaintiff three months worth of commissions for the terminated market(s) based on the previous month's sales. *Id.* at ¶ 3(b).  In 2007 Equilon began to withdraw from the retail market selling its interest to a third party.  Accordingly, Equilon terminated the Agreement with Plaintiff and this litigation ensued. Complaint at ¶ 83.

## III.

## PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on April 10, 2008 in the San Diego Superior Court.  Equilon's registered agent for service of process was served with the Complaint on April 30, 2008.  Equilon, a limited liability company organized under Delaware law with its principal place of business in Texas, removed the action to the United States District Court for the Southern District of California

1    based on diversity of the parties on May 30, 2008.  As of the time of removal, Equilon was informed

2    and believed that Citibank had not yet been served with the Complaint.

3                                           **IV.**

4                                    **LEGAL STANDARD**

5            Rule 12(b)(6) of the Federal Rules of Civil Procedure provides a mechanism for disposing of

6    legally insufficient claims. *Walker Distributing Co. v. Lucky Lager Brewing Co*., 323 F.2d 1 (9th

7    Cir. 1963), *cert. denied*, 385 U.S. 976 (1964).  A motion under Rule 12(b)(6) may be granted where

8    the plaintiff cannot allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

9    *Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007).

10           When attacked pursuant to Rule 12(b)(6), well-pled allegations in a complaint must be

11   treated as true and all reasonable inferences drawn in the plaintiff's favor.  *North Star Int'l v. Arizona*

12   *Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983).  Conclusory allegations of law and unwarranted

13   inferences, however, are insufficient to defeat a motion to dismiss.  *In re Verifone Sec. Litig.*, 11

14   F.3d 865, 868 (9th Cir. 1993).  A Rule 12(b)(6) motion asks whether, assuming the well-pled

15   allegations in the complaint are true, Plaintiff has stated a claim upon which relief can be granted.

16   Fed. R. Civ. P. 12(b)(6).  Finally, where the defects cannot be cured by amendment, the court may

17   grant the motion to dismiss without leave to amend.  *Albrecht v. Lund*, 845 F.2d 193, 195-196 (9th

18   Cir. 1988) (amendment to fraud complaint properly denied where alleged misstatement "could not

19   be misrepresentations as a matter of law").  Therefore, dismissal is proper when the plaintiff has

20   failed to assert a cognizable legal theory or when he has not alleged sufficient facts in support of

21   such a theory.  *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

22                                          **V.**

23                                    **ARGUMENT**

24   **A.       TEXAS LAW GOVERNS THIS DISPUTE.**

25           Preliminarily, the substantive sufficiency of Plaintiff's claims must be analyzed under Texas

26   law as the parties agreed that Texas law would govern disputes such as the present one.  Specifically,

27   Paragraph 19 of the Agreement states:  "This Agreement and the performance hereunder shall be

28

1    governed by the laws of the State of Texas, without regard to the conflicts of laws principles

2    therein."  As set forth below, the Court should uphold the parties' choice of law.

3                    1.        **Under California Law, The Parties' Choice of Law Provision Is Valid.**

4            Federal courts in a diversity case will apply the same choice of law rules the local state courts

5    would apply.  *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941); *Patton v. Cox*, 276 F.3d

6    493, 495 (9th Cir. 2002).  Under California law, contracting parties may agree that the law of

7    another state shall govern their rights and duties.  *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal.4th 459,

8    462 (California has a strong policy "favoring the enforcement of freely negotiated choice-of-law

9    clauses").  Further, where a contract contains an enforceable choice of law provision, the trial court

10   must enforce all of the applicable laws of that jurisdiction.  *See Hughes Elecs. Corp. v. Citibank*

11   *Delaware*, 120 Cal.App.4th 251, 256 (2004).  If the parties have stated their choice of governing

12   law, California courts apply the principles set forth in the Restatement (Second) of Conflict of Laws

13   § 187 to determine whether the provision is enforceable.  *Id.* at 464-65; *Discover Bank v. Super. Ct.*,

14   36 Cal. 4th 148, 173-74 (2005).

15           Applying the principles set forth in the Restatement, California courts will uphold the parties'

16   choice of law if the contract has a substantial relationship to the place whose law is chosen, or there

17   is another reasonable basis for the parties' choice of law, and application of that law will not

18   contravene any strong California public policy.  *Discover Bank*, 36 Cal. 4th at 173-174; *Nedlloyd*, 3

19   Cal. 4th at 464-465.  There can be no dispute in this case that a reasonable basis exists for the

20   parties' choice of Texas law.  Here, Equilon's principal place of business is located in Houston,

21   Texas.  *See* Equilon's Notice of Removal of Action Under 28 U.S.C. § 1441 at ¶ 6.  The fact that one

22   of the parties resides in another state gives the parties a reasonable ground for choosing that state's

23   law.  *Nedlloyd*, 3 Cal. 4th at 467; *Hughes Elecs. Corp.*, 120 Cal.App.4th at 258.  Thus, the parties'

24   choice of Texas law is reasonable.

25           Next, if the Court determines the parties' choice of law was reasonable, the Court will look to

26   conflict of law principles, particularly whether application of the chosen law would contravene any

27   strong or fundamental California public policy.  *Nedlloyd*, 3 Cal. 4th at 466.  Here, there is no

28   indication the Texas laws at issue in this lawsuit contravene any strong California public policy.  To

1  the extent Plaintiff has pled legally cognizable claims, such claims are afforded relief under Texas

2  law in a manner that is not fundamentally different than under California law.  Accordingly, the

3  Court should uphold the parties' choice of law provision.  *Application Group, Inc. v. Hunter Group,*

4  *Inc.*, 61 Cal.App.4th 881, 897 (1998) (where reasonable basis for parties' choice of law exists and

5  there is no conflict with a fundamental policy of California, the court must enforce the parties'

6  choice).

7                    **2.      The Choice of Law Provision Applies To The Entire Complaint.**

8            Contractual choice of law provisions apply to tort claims when the claims are closely related

9  to an underlying contract.  *See Nedlloyd*, 3 Cal. 4th at 470.  The causes of action in Plaintiff's

10  complaint arise directly out of the terms of the Agreement and/or the parties' relationship as

11  governed by the Agreement.  The parties unambiguously agreed Texas law would govern the

12  Agreement.  Accordingly, Texas law applies not only to claims for breach of the Agreement but "to

13  all disputes arising out of the transaction or relationship."  *Id.* at 469.  This includes "tortious

14  breaches of duties emanating from the agreement of the legal relationships it creates" such as a

15  breach of fiduciary duty claim or fraud claim arising out of a contract.  *Id.* at 469–470; *see General*

16  *Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1506 (9th Cir 1995).  Thus, the

17  parties' choice of law provision mandates Texas law govern the entire dispute.

18     **B.      PLAINTIFF FAILS TO STATE A CLAIM FOR BAD FAITH BREACH OF
              CONTRACT.**

19

20            Plaintiff's Second Cause of Action is labeled "Bad Faith Breach of Contract."  Complaint at

21  ¶¶ 20 – 21.  However trying to decipher what legal theory Plaintiff is trying to assert is difficult, if

22  not impossible.  Preliminarily, and perhaps most obviously, Plaintiff's claim does not allege facts

23  indicating Equilon breached any agreement, let alone in bad faith.  Rather, in a conclusory fashion

24  Plaintiff asserts the negotiated provisions in paragraphs 2 and 3 of the Agreement, which permit

25  adding or deleting a market with "just prior written notice" are "unconscionable" and "unfair."

26  Complaint at ¶ 21.  Thus, on its face, Plaintiff's Second Cause of Action clearly fails to state a

27  cognizable claim for "bad faith breach of contract."  Further, as discussed below, the other possible

28  claims Plaintiff may be alleging must also fail.

1.      **Under Texas Law, Plaintiff May Not Assert A Claim For Breach Of The Duty of Good Faith and Fair Dealing In The Context Of This Lawsuit.**

Rather than allege a breach of the Agreement, Plaintiff appears to allege that the Agreement—which was entered into at arms length by sophisticated parties—was somehow unfair to Plaintiff.  If Plaintiff's Second Cause of Action is an attempt to allege a breach of the duty of good faith and fair dealing, Plaintiff has failed to state a claim as a matter of law as "[t]he duty of good faith and fair dealing does not exist in Texas unless intentionally created by express language in a contract or unless a special relationship of trust and confidence exists between the parties to the contract." *Lovell v. Western Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302 (Tex. App. 1988); *see Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987); *English v. Fischer*, 660 S.W.2d 521, 522, 524-25 (Tex. 1983).

First, the parties Agreement does not contain express language imposing a duty of good faith and fair dealing, nor has Plaintiff alleged such language in his Complaint.  Second, neither the Complaint nor the Agreement contains a valid basis upon which Plaintiff can allege facts stating that a duty of good faith and fair dealing existed by virtue of a "special relationship" between the parties. Absent a "special relationship," the duty to act in good faith is contractual in nature and a breach of the duty does not amount to an independent tort.  *See Central Sav. & Loan Ass'n v. Stemmons N.W. Bank, N.A.,* 848 S.W.2d 232, 239 (Tex. App. 1992); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 481 (Tex. App. 1989).

While Texas courts have carved out exceptions for certain "special relationships," such as those between insurers and insureds, principal and agent, joint venturers, and partners, they have consistently rejected finding a duty of good faith and fair dealing owed by an employer to an employee and have also held the "special relationship" necessary to create a common-law duty to act in good faith does not apply to ordinary commercial and employment relationships created by contract.  *See Arnold,* 725 S.W.2d at 167; *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App. 1993); *Central Sav. & Loan Ass'n,* 848 S.W.2d at 239.

Here, the integrated Agreement, which was intended by the parties to govern Plaintiff's business and work relationship with Equilon, clearly sets forth the nature of Plaintiff's relationship

1   to Equilon as merely that of an independent contractor and expressly states that the intent and

2   purpose of the Agreement is *not* to create:

3               the relation of employer and employee, co-employer or joint employer,
            any type of partnership relationship, a landlord-tenant relationship, a
4           franchise relationship under the Federal Petroleum Marketing
            Practices Act or any state franchise laws, or any joint venture.

5

6   RJN, Exh. 1 at ¶ 4.

7   Thus, it is clear that by the very terms of the Agreement, which governs the parties' entire

8   relationship and also contains an integration clause, there is no possible way for Plaintiff to allege

9   facts supporting the existence of a "special relationship" with Equilon.  *See* RJN, Exh. 1 at ¶ 20.

10  Accordingly, Plaintiff cannot state a claim for breach of the duty of good faith and fair dealing and

11  Plaintiff's Second Cause of Action must be dismissed as to Equilon.

12                   **2.      Plaintiff Has Failed To Sufficiently Allege The Agreement Was
                            Unconscionable.**
13

14          Finally, in his Second Cause of Action, Plaintiff alleges "The contract entered in to [sic] by

15  Plaintiff and Defendants was unconscionable where it provides that Defendants may add or delete

16  markets to the agreement with just prior written notice to the contractor, in this case Plaintiff."

17  Complaint at ¶ 21.  To the extent Plaintiff attempts to allege provisions of the Agreement were

18  unconscionable and therefore unenforceable, Plaintiff has again failed to allege any facts to support

19  such a claim.  The Agreement is clear and unambiguous regarding the parties rights to terminate.

20  Complaint at ¶¶ 1-3.  Plaintiff has not and cannot allege facts which make these terms

21  unconscionable and thus the claim must be dismissed.

22          **C.      IN THE EVENT THE COURT ELECTS NOT TO DISMISS PLAINTIFF'S
                SECOND CAUSE OF ACTION IN ITS ENTIRETY, THE COURT SHOULD
23              ORDER A MORE DEFINITE STATEMENT PURSUANT TO FEDERAL
                RULE OF CIVIL PROCEDURE 12(e).**
24

25          As set forth above, Plaintiff's Second Cause of Action must be dismissed under Federal Rule

26  of Civil Procedure 12(b)(6) for failure to state a claim.  In the event the Court determines it is not

27  appropriate to do so, Equilon requests this Court grant its motion to order Plaintiff to provide a more

28  definite statement, pursuant to Federal Rule of Civil Procedure 12(e).  Specifically, Plaintiff should

be required to set forth specific factual and legal grounds upon which it alleges Equilon is liable for "Bad Faith Breach of Contract."

Federal Rule of Civil Procedure 12(e) provides:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.

A motion for a more definite statement is the proper vehicle to narrow issues and disclose the boundaries of one's claims. *See Williams v. United Credit Plan, Inc*., 526 F.2d 713, 714 (5th Cir. 1976).  Where allegations in the complaint are too indefinite to apprise the defendant of the nature of the claims made against it or are too insufficient to enable the defendant to prepare a defense, additional information may be required by a motion of a more definite statement. *See Gulf Coast Western Oil Co., Inc. v. Trapp*, 165 F.2d 343, 348 (10th Cir. 1947).  A more definite statement is appropriate under Federal Rule of Civil Procedure 12(e) where the precise nature of the claim is unascertainable in the operative pleading. *See, e.g., Family Golf Centers, Inc. v. Acushnet Co*., 290 B.R. 55 (S.D.N.Y. 2003).

Here, the only factual allegations Plaintiff pleads in support of his claim are:

> The contract entered in to [sic] by Plaintiff and Defendants was unconscionable where it provides that Defendants may add or delete markets to the agreement with just prior written notice to the contractor, in this case Plaintiff.  This is unilateral power to restrict the market, it is unfair to Plaintiff.

Complaint at ¶ 21.

As asserted above, these allegations are too vague and ambiguous to determine what wrongful conduct Equilon allegedly undertook and how Plaintiff was harmed.  For instance, while Plaintiff has labeled his claim as "Bad Faith Breach of Contract," Plaintiff has not alleged any breach of an agreement nor has he alleged facts demonstrating bad faith on the part of Equilon.  Moreover, Plaintiff does not even identify any wrongful conduct on the part of Equilon.  As presently plead Plaintiff's vague factual allegations create an uncertainty in pleading that make it impossible for Equilon to frame a response, thus warranting a more definite statement if this Court elects not to dismiss Plaintiff's Second Cause of Action against Equilon.

### D.    PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiff's Third Cause of Action for "Unjust Enrichment" must also be dismissed for failure to state a claim.  Plaintiff essentially alleges Equilon is being unjustly enriched because it is still receiving income from Plaintiff's sales without compensating Plaintiff.  Complaint at ¶¶ 25, 26.  As discussed below, the Complaint fails to state a claim as a matter of law as the unjust enrichment doctrine is not applicable where a valid express contract, such as the Agreement, governs the dispute or where Plaintiff's allegations contradict the express language of the Agreement.

Under the unjust enrichment doctrine, principles of restitution are applied to disputes which are not governed by a contract between the parties.  *See Lone Star Steel Co. v. Scott,* 759 S.W.2d 144, 154 (Tex. App. 1988).  However, remedies such as unjust enrichment that are based on quasi-contract or an implied in law contract are unavailable when a valid, express contract governing the subject matter of the dispute exists.  *Id.* at 154.

Here, Plaintiff's entitlement to commissions and Equilon's right to terminate the Agreement were expressly governed by the express terms of the Agreement.  The Agreement dictated how Plaintiff would be compensated for his sales and expressly provides "[e]ither [Equilon] or [Plaintiff] may terminate this Agreement either in its entirety or for a particular Market, at any time for any reason or no reason at all, by giving the other at least 2 days advance written notice."  RJN, Exh. 1 at ¶ 2.  The Agreement also permitted Equilon to terminate Plaintiff without cause provided it paid Plaintiff three months commissions.  *Id.* at ¶ 3(b).  Finally, the Agreement has an integration clause requiring modifications to the Agreement to be in a writing executed by Equilon.  *Id.* at ¶ 20.  Accordingly, as a matter of law, Plaintiff cannot allege facts supporting a claim for unjust enrichment.

The Complaint fails to state a claim for unjust enrichment for another reason.  Plaintiff's allegations merely indicate that Equilon exercised its rights under the Agreement.  In his Complaint, Plaintiff alleges he was terminated by Equilon.  Complaint at ¶ 83.  Based on the terms of the Agreement, which Plaintiff acknowledges he entered into and seeks to enforce, Equilon was entitled to terminate Plaintiff's services without cause so long as it complied with Paragraph 3(b) and paid Plaintiff three months commissions.  The enrichment of one party at the expense of the other is not

1  unjust where it is permissible under the terms of an express contract. *Burlington N. R.R. v. Sw. Elec.*

2  *Power Co.*, 925 S.W.2d 92, 97 (Tex. App. 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998). Thus, Plaintiff

3  cannot legitimately allege he is entitled to commissions based on revenues received by Equilon

4  subsequent to Plaintiff's termination nor can he allege that Equilon was unjustly enriched post-

5  termination. Therefore, Plaintiff's Third Cause of Action must be dismissed for failure to state a

6  claim.

7       **E.**    **PLAINTIFF'S FRAUD CLAIMS ARE NOT PLEAD WITH SUFFICIENT**

8                **SPECIFICITY AND REQUIRE DISMISSAL.**

9       Plaintiff's Complaint contains a Sixth Cause of Action entitled "Fraud and Request for

10  Constructive Trust" and an Eighth Cause of Action entitled "Negligent Misrepresentation."

11  Complaint at ¶¶ 42-53, 59-62. Federal Rule of Civil Procedure 9(b) clearly provides "[i]n alleging

12  fraud or mistake, a party must state with particularity the circumstances constituting fraud or

13  mistake." "Fraud must be plead with a high degree of meticulousness." *Desaigoudar v. Meyercord*,

14  223 F.3d 1020, 1022 (9th Cir. 2000). While the substantive elements of fraud are determined by

15  state law in diversity cases (in this case, the laws of Texas), the elements must be plead with

16  particularity as required by Federal Rule of Civil Procedure 9(b). The allegations must be "specific

17  enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud

18  … so that they can defend against the charge and not just deny that they have done anything wrong."

19  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). However, Plaintiff has failed to plead the

20  factual allegations of the alleged fraud and/or misrepresentations as required by Federal Rule of

21  Civil Procedure 9(b) with regard to both of his fraud claims. Thus, as discussed below, Plaintiff's

22  Sixth and Eighth Causes of Action should be dismissed as against Equilon.

23       **1.**    **Plaintiff Has Failed To Plead His Fraud Claim With Requisite**

24                **Particularity.**

25       First, Plaintiff's Sixth Cause of Action is labeled "Fraud and Request for Constructive

26  Trust." Under Texas law, the substantive elements of actionable fraud are: (1) a material

27  representation was made; (2) the representation was false; (3) when the representation was made the

28  speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive

1  assertion; (4) the speaker made the representation with the intent that it should be acted upon by the

2  party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered

3  injury.  *See Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990).

4      In order to comply with Rule 9(b), a plaintiff must (1) specify the alleged fraudulent

5  representations, (2) allege the representations were false when made, (3) identify the speaker, (4)

6  state when and where the statements were made, and (5) state the manner in which the

7  representations were false and misleading.  *See In re GlenFed, Inc. Secur. Litig.*, 42 F.3d 1541,

8  1547, fn. 7 (9th Cir. 1994) (en banc).

9      In the Complaint, Plaintiff alleges that Steve Brommer made or affirmed a fraudulent

10 statement to Plaintiff that "[Plaintiff] was to have and receive all of his interest in monies paid by the

11 sales he made."  Complaint at ¶¶ 45, 46.  Plaintiff fails to allege *when* and *where* the allegedly

12 fraudulent statement was made, only alleging that "[t]he discussions about Plaintiff … took place in

13 the [sic] 2005."  *Id.* at ¶ 47.  The Complaint contains no other allegations relating to when and where

14 the alleged statements were made.  Thus, Plaintiff has failed to plead his fraud claim in compliance

15 with Rule 9(b).

16      **2.    Plaintiff Has Failed To Plead His Negligent Misrepresentation Claim
              With Particularity.**

17

18      Plaintiff's Eighth Cause of Action is entitled "Negligent Misrepresentation."  In order to state

19 a claim for negligent misrepresentation under Texas law, a plaintiff must allege the following

20 substantive elements:  (1) the defendant made a representation in the course of its business, or in a

21 transaction in which it had a pecuniary interest (2) the defendant supplied false information for the

22 guidance of others in their business (3) the defendant did not exercise reasonable care or competence

23 in obtaining or communicating the information (4) the plaintiff suffered pecuniary loss by justifiably

24 relying on the representation.  *Fondren Constr. Co., Inc. v. Briarcliff Housing Dev. Assocs., Inc.*, 196

25 S.W.3d 210, 218 (Tex. App. 2006).[1]

---

26

27 [1]  As with his Sixth Cause of Action, in order to comply with Rule 9(b), a plaintiff must (1) specify
   the alleged fraudulent representations, (2) allege the representations were false when made, (3)
   identify the speaker, (4) state when and where the statements were made, and (5) state the manner in
28 which the representations were false and misleading.  *See In re GlenFed.*, 42 F.3d at 1547, fn. 7.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
EQUILON ENTERPRISES LLC'S MOTION TO DISMISS COMPLAINT

1    Here, Plaintiff makes only general allegations and fails to identify *the person or persons who*

2  *made the alleged misrepresentations* or *when* and *where* the misrepresentations were made.

3  Complaint at ¶¶ 59-62. Thus, Plaintiff has failed to satisfy the pleading requirements of Rule 9(b).

4    Further Plaintiff's own allegations show he is simply asserting a breach of contract claim.

5  Specifically at paragraph 62 Plaintiff alleges:

6    The specific representation made was that Plaintiff would be
7  compensated for the sales made. This was a present fact at the time the
   agreement was reached. The **subsequent actions wherein the**
   **representation was not honored was a failure on the part of**
8  **defendant to honor the representation.**

9  Complaint at ¶62 (emphasis added). The Texas Supreme Court has held "if the defendant's conduct

10 … would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim

11 ordinarily sounds in contract." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.

12 1991). Certainly, failing to "honor the representation" is tantamount to a breach of contract claim

13 and the Eighth Cause of Action should be dismissed.

14    **F.    PLAINTIFF'S FIFTH AND SEVENTH CAUSES OF ACTION FAIL TO**
      **STATE A CLAIM AS PLAINTIFF CANNOT ALLEGE A BREACH OF**
15    **FIDUCIARY DUTY.**

16    Plaintiff has alleged two causes of action alleging Equilon breached fiduciary duties owed to

17 Plaintiff. A fiduciary relationship giving rise to fiduciary duties is one that, as a matter of law, is a

18 relationship of trust and confidence, such as that between an attorney and client, a trustee and

19 beneficiary, and between partners in a partnership. *See, e.g., Thigpen v. Locke*, 363 S.W.2d 247, 253

20 (Tex. 1962). However, as set forth below, there is no legal or factual basis for Plaintiff's conclusory

21 allegations that a fiduciary relationship existed and, thus, Plaintiff's Fifth ("Constructive Trust

22 Arising From Breach of Fiduciary Duty") and Seventh ("Constructive Trust/Breach of Fiduciary

23 Duty") Causes of Action must be dismissed.

24    **1.    Plaintiff's Fifth Cause of Action Must Be Dismissed As The Parties'**
      **Agreement Specifically States No Partnership Was Formed.**
25

26    In his Fifth Cause of Action, Plaintiff alleges he entered into the Agreement with Equilon

27 whereby he was hired as an independent contractor to sell credit accounts for Equilon in exchange

28 for commissions on his sales. Complaint at ¶¶ 32-35. Despite affirmatively alleging his relationship

12

with Equilon was (1) as an independent contractor and (2) contractual in nature, Plaintiff makes the conclusory allegation that "[a]s a result of this agreement to hire Plaintiff a fiduciary duty was formed" with Equilon.  *Id.* at ¶ 36.  Plaintiff then alleges the nature of the alleged fiduciary relationship is that of partners.  *Id.* at ¶ 37.  However, these allegations are insufficient to state a claim for breach of fiduciary duty as they directly contradict the very contract Plaintiff alleges governed his relationship with Equilon.

In fact, the Agreement specifically states "it is not the purpose or intention of this Agreement to create between the parties hereto, nor shall the same be construed as creating, nor shall [Equilon] or [Plaintiff] ever assert that this Agreement creates or created … any type of partnership relationship…."  RJN, Exh. 1 at ¶ 4.  Moreover, the Agreement contains an integration clause and Plaintiff has not alleged the existence of any other written agreement that modifies or supersedes the Agreement and would create a fiduciary relationship between Plaintiff and Equilon.  *See id.* at ¶ 20.  Furthermore, Plaintiff has not alleged any other facts indicating he had a special relationship with Equilon giving rise to a fiduciary relationship, nor can he.  Consequently, based upon the allegations of the Complaint and the express language of the Agreement, Plaintiff cannot prove facts sufficient to support of his Fifth Cause of Action for "Constructive Trust Arising From Breach of Fiduciary Duty."

### 2.    Plaintiff's Seventh Cause of Action Must Be Dismissed.

Like his Fifth Cause of Action, Plaintiff's Seventh Cause of Action labeled "Constructive Fraud/Breach of Fiduciary Duty" must also be dismissed as against Equilon for failure to state a claim.  In this cause of action, Plaintiff alleges "Defendants owed Plaintiff a fiduciary duty created by the agreement between the parties to enter into a joint venture for the purposes of purchasing and profiting from a real estate venture."  Complaint at ¶ 55.  Plaintiff then alleges in a conclusory fashion that he and Equilon were partners.  *Id.*  Taken together, the remaining allegations of the Complaint and the Agreement demonstrate Plaintiff's Seventh Cause of Action fails to state a claim.

Plaintiff's allegation he entered into an agreement to form a joint real estate venture with Equilon is nonsensical.  In fact, other than the allegations of this claim, there is no mention anywhere else in the Complaint or in the Agreement of a joint real estate venture involving Equilon and

1    Plaintiff or any related agreement between the parties.  Tellingly, Plaintiff did not attach a copy of

2    this alleged agreement to his Complaint nor has he pleaded any of the terms of the alleged

3    agreement.  In addition, as discussed above in connection with Plaintiff's fraud claim, there is

4    absolutely no basis for Plaintiff's allegations regarding the formation of a partnership or fiduciary

5    relationship as the parties' relationship was governed solely by the Agreement, which expressly

6    disavows any partnership relationship and contains a valid integration clause.  RJN, Exh. 1 at ¶¶ 4,

7    20.  As a result, Plaintiff's Seventh Cause of Action must be dismissed.

8    **G.    PLAINTIFF'S TENTH CAUSE OF ACTION FOR BREACH OF A RESULTING TRUST MUST BE DISMISSED.**

9

10    In his Tenth Cause of Action, Plaintiff alleges a claim for "Breach of a Resulting Trust,"

11    seeking a determination by the Court of the existence of a resulting trust over funds Plaintiff alleges

12    are being improperly held by Defendants.  Complaint at ¶¶ 68-72.  However, Plaintiff's claim must

13    be dismissed as the underlying claims upon which a resulting trust could be based are subject to

14    dismissal for failure to state a claim.

15    "A resulting trust is an actual, binding trust that can develop where the parties intended a

16    confidential or fiduciary relationship to develop and acted accordingly, but failed to create a valid

17    actual trust agreement."  *Harris v. Sentry Title Co., Inc.*, 715 F.2d 941, 946 (5th Cir. 1983).  As

18    discussed above, Plaintiff's Fifth and Seventh Causes of Action for breach of fiduciary duty must be

19    dismissed for failure to state a claim as Plaintiff cannot allege facts sufficient to support the

20    existence of a fiduciary duty owed by Equilon to Plaintiff or any other confidential or special

21    relationship between the parties.  Thus, there is no other legal or factual basis to support the

22    existence of a resulting trust.  Accordingly, Plaintiff's Tenth Cause of Action must also be

23    dismissed.

24    **H.    PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE.**

25    Plaintiff's Ninth Cause of Action for Negligence should be dismissed as it fails to state a

26    claim.  Plaintiff alleges Equilon had a "duty to act reasonably for the care and safety of the Plaintiff,

27    among others."  Complaint at ¶ 64.  Plaintiff further alleges "Defendants [sic] failure to properly

28    provide for the Plaintiff's property interest and failure to properly honor the Plaintiff's interest in the

1    funds is a breach of the Defendant's [sic] duty to act reasonably for the care and safety of the

2    Plaintiff."  Complaint at ¶ 66.  Based on these allegations and the other allegations of the Complaint,

3    the only cognizable theory is that the alleged failure to pay commissions somehow constitutes

4    negligence on the part of Defendants.

5         As previously noted, the Texas Supreme Court has held "if the defendant's conduct … would

6    give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily

7    sounds in contract."  *Southwestern Bell Tel. Co.*, 809 S.W.2d at 494.  Moreover, if the plaintiff's

8    losses consist only of "the economic loss to the subject matter of the contract," the plaintiff only has

9    a cause of action in contract.  *Id.*; *see also Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618

10   (Tex. 1986).  Here, Plaintiff has failed to state a claim for negligence as his allegations indicate his

11   claim is duplicative of his breach of contract claim.

12        In his Ninth Cause of Action, Plaintiff appears to seek only unpaid commissions from

13   Equilon pursuant to the Agreement.  Complaint at ¶¶ 66, 67.  To the extent Equilon was obligated to

14   pay Plaintiff commissions, the obligation arose solely out of the express terms of the Agreement.  In

15   other words, Plaintiff is improperly attempting to cast a simple breach of contract claim (which he

16   has already alleged) as a negligence claim.  Thus, under Texas law, Plaintiff is precluded from

17   alleging negligence.  Accordingly, Plaintiff's Ninth Cause of Action must be dismissed as Plaintiff

18   cannot state a claim for negligence as a matter of law.

19        **I.    PLAINTIFF FAILS TO STATE A CLAIM FOR INTERFERENCE WITH
               PROSPECTIVE BUSINESS ADVANTAGE.**
20

21        Plaintiff's Eleventh Cause of Action is entitled "Interference with Prospective Business

22   Advantage."  Notwithstanding the title of the claim, Plaintiff appears to be alleging a tortious

23   interference with contract claim as the allegations of the Complaint concern an alleged interference

24   with an *existing contract* rather than a future business relationship or opportunity.  *See* Complaint at

25   ¶¶ 74-79.  That said, as currently pleaded, Plaintiff cannot state a claim for tortious interference with

26   contract.

27        In support of his claim, Plaintiff alleges that "an agreement" existed between "Defendants"

28   and Plaintiff entitling Plaintiff to commissions.  Complaint at ¶ 74.  However, as alleged throughout

1  the Complaint and as specified in the Agreement, Plaintiff's entitlement to commissions from

2  Equilon was governed solely by the terms of the Agreement.  Thus, the only logical conclusion is

3  that Plaintiff's reference to "an agreement" refers to the February 24, 2005 Agreement between

4  Plaintiff and Equilon.

5      Plaintiff further alleges "Defendants" knew Plaintiff entered into the Agreement "with each

6  Defendant."  *Id.* at ¶ 75.  The only parties to the Agreement were Plaintiff and Equilon.  *See* RJN,

7  Exh. 1 at Preamble ("THIS IS AN AGREEMENT … between Equilon Enterprises LLC, d/b/a/ Shell

8  Oil Products US … and Samuel St. James….).  This fact, coupled with the fact that Plaintiff has not

9  alleged he entered into a separate agreement with Citibank entitling him to commissions, logically

10 leads to the conclusion that Plaintiff's use of the term "Defendants" in this allegation refers to

11 Equilon.

12     Finally, Plaintiff alleges "Defendants each intended to and did disrupt the performance of the

13 contract by the other Defendants" and that as a result, "Defendants and each of them failed to

14 properly transfer to Plaintiff the proceeds from the sales."  *Id.* at ¶ 76.

15     Taking all of these allegations together, the *only* conclusion is that *Plaintiff alleges Equilon*

16 *interfered with its own Agreement*.  It is axiomatic within the context of a tortious interference with

17 contract cause of action that a party to the contract cannot interfere with itself.  *Holloway v. Skinner*,

18 898 S.W.2d 793, 804 (Tex. 1995).  Therefore, Plaintiff has failed to state a claim for interference

19 with contract and the claim must be dismissed.

20     **J.    PLAINTIFF FAILS TO STATE A CLAIM FOR UNFAIR BUSINESS
           PRACTICE.**

21

22     Plaintiff's Twelfth Cause of Action for "Unfair Business Practice" fails to allege facts

23 sufficient to support his claim.  Here, Plaintiff essentially alleges that:  (1) Equilon hired Plaintiff

24 and then decreased his pay, (2) Equilon failed to inform Plaintiff about a "potential sale" of the

25 Phoenix market before offering to buy the market from Plaintiff and (3) Plaintiff was "wedged out of

26 markets and ultimately terminated."  Complaint at ¶¶ 80-83.

27     Based on these vague allegations, it is not clear what specific claim Plaintiff is attempting to

28 assert.  That said, under Texas law, the Deceptive Trade Practices-Consumer Protection Act

16

Case No.  08 CV 0962 J (AJB)

("DTPA") is the primary vehicle by which a consumer can allege unfair business practices.  *See* Tex. Bus & Commerce Code §17.41, *et seq*.  The purpose of the DTPA is to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty.  *See Amstadt v. U.S. Brass Corp*., 919 S.W.2d 644, 649 (Tex. 1996).  However, to be actionable under the DTPA, a defendant's deceptive conduct must occur in connection with a consumer transaction.  *See Todd v. Perry Homes*, 156 S.W.3d 919, 923 (Tex. App. 2005).  As alleged in his Complaint, Plaintiff's claims do not arise out of a consumer transaction.  Rather, they arise out of Plaintiff's independent contractor relationship with Equilon which was governed by the Agreement or its predecessors.[2]  Consequently, Plaintiff's Twelfth Cause of Action for "Unfair Business Practice" fails to state a claim and must be dismissed.

## VI.

## <u>CONCLUSION</u>

For all of the forgoing reasons, Equilon's Motion to Dismiss should be granted.


Dated:      June 6, 2008                          **WILSON PETTY KOSMO & TURNER LLP**


                                                   By:      _____/s/  Robin A. Wofford_____
                                                            Robin A. Wofford
                                                            Hubert Kim
                                                            Attorneys for Defendant
                                                            EQUILON ENTERPRISES LLC DBA
                                                            SHELL OIL PRODUCTS US

---

[2] Due to the vague allegations of Plaintiff's claim, Equilon is unable to determine whether Plaintiff's allegations stem from alleged conduct that occurred prior to or after the execution of the Agreement in February 2005.

1 | WILSON PETTY KOSMO & TURNER LLP
ROBIN A. WOFFORD (137919)
2 | HUBERT KIM (204957)
550 West C Street, Suite 1050
3 | San Diego, California 92101
Telephone: (619) 236-9600
4 | Facsimile: (619) 236-9669
E-mail: rwofford@wpkt.com
5 | E-mail: hkim@wpkt.com

6 | Attorneys for Defendant EQUILON ENTERPRISES LLC
dba SHELL OIL PRODUCTS US

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMUEL ST. JAMES, | Case No. 08 CV 0962 J (AJB) |
| Plaintiff, | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT EQUILON ENTERPRISE LLC'S MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT** |
| v. | |
| EQUILON ENTERPRISES, LLC, dba SHELL OIL PRODUCTS US; CITIGROUP BANK, and DOES 1 through 20, INCLUSIVE, | |
| Defendants. | **[F.R.C.P. 12(b)(6), 12(e) and 9(b)]** |
| | Complaint Filed: April 10, 2008 |
| | Date:        July 7, 2008<br>Time:       10:30 a.m.<br>District Judge:  Hon. Thomas J. Whelan<br>Magistrate Judge: Hon. Anthony J. Battaglia<br>Trial Date:   Not Set |
| | **[No Oral Argument Per Local Rules]** |

Pursuant to Federal Rule of Evidence 201(b)(2), Defendant Equilon Enterprises LLC, dba Shell Oil Products US (hereafter "Equilon") respectfully requests that this Court take judicial notice of the following documents in support of Equilon's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, For a More Definite Statement:

1. Paragraph 2 of Plaintiff's Complaint cites to an express written agreement dated February 24, 2005 as "Exhibit A." *See* Complaint at ¶ 2. Attached hereto as Exhibit 1 is a true and correct copy

1

1  of the February 24, 2005 Contractor Agreement referred to by Plaintiff as "Exhibit A" in the

2  Complaint, which was provided by Plaintiff's counsel in response to Equilon's request.

3

4  Dated:     June 6, 2008                    **WILSON PETTY KOSMO & TURNER LLP**

5

6                                   By:     _____/s/  Robin A. Wofford_____
                                            Robin A. Wofford
7                                           Hubert Kim
                                            Attorneys for Defendant
8                                           EQUILON ENTERPRISES LLC DBA
                                            SHELL OIL PRODUCTS US
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT
EQUILON ENTERPRISES LLC'S MOTION TO DISMISS COMPLAINT

Exhibit 1



### CONTRACTOR AGREEMENT

THIS IS AN AGREEMENT ("Agreement") effective March 1, 2005 between Equilon Enterprises LLC, d/b/a Shell Oil Products US ("Company"), whose address is 12700 Northborough Drive, Houston, TX and Samuel St. James ("Contractor"), with a mailing address at P.O. Box 84652, San Diego, California 92138. This Agreement will supersede the Agreement entered into by the Parties on June 1, 2003 in all respects.

1.      SCOPE  Contractor shall provide Fleet Card Solicitation Services ("Services") to Company in the following California Markets: LA County, San Bernardino, High Desert, Riverside, Ventura County, Santa Barbara, San Louis Obispo, Orange County, and San Diego ("Markets"). Company may add or delete Markets to this Agreement by prior written notice to Contractor  Contractor shall be ethical, courteous, fair, and efficient at all times when soliciting business for Company.

2.      TERM  This Agreement shall be binding from execution and shall be in effect for a term of one (1) year beginning on the effective date hereof, and shall be automatically renewed for successive one year terms, unless sooner terminated pursuant to the provisions of this article 2 or other provisions of this Agreement.  Either Company or Contractor may terminate this Agreement either in its entirety or for a particular Market, at any time and for any reason or no reason at all, by giving the other at least two (2) days advance written notice.

3.      DEFAULT -- CURE.    (a)    Notwithstanding article 2 of this Agreement, if Contractor defaults in the performance of any covenant or condition of this Agreement (outside this article 3), or fails to follow operating procedures (either attached as exhibits to this Agreement or distributed separately by Company), and as to any such default which can be cured, fails to remedy or begin to remedy same within ten (10) days after the Company gives notice thereof to the Contractor, Company may terminate this Agreement.

(b)    In the event Company terminates this Agreement in one or all markets without cause, Company shall pay Contractor three (3) months worth of Commission (as defined under Section 5) based on the previous months' sale of gallons in that market(s).

4.      RELATIONSHIP OF PARTIES.    (a)    Nothing in this Agreement shall be construed as reserving to Company any right to exercise any control over, or to direct in any respect Contractor's performance of services hereunder; but the entire control and direction of such services shall be and remain in Contractor, subject only to Contractor's performance of the obligations of this Agreement. It is expressly understood and agreed that it is not the purpose or intention of this Agreement to create between the parties hereto, nor shall the same be construed as creating, nor shall Company or Contractor ever assert that this Agreement creates or created the relation of employer and employee, co-employer or joint employer, any type of partnership relationship, a landlord-tenant relationship, a franchise relationship under the Federal Petroleum Marketing Practices Act or any state franchise laws, or any joint venture.  Neither Contractor nor any person performing any duties or engaged in any work pursuant to this Agreement for or on behalf of Contractor is authorized to impose on Company any obligations or liability whatsoever except as expressly provided herein. It is the intent of the parties under this Agreement to create an Independent Contractor relationship between Company and Contractor

(b)    All personnel furnished by Contractor for its performance of services hereunder shall be the employees of Contractor and must be eligible to work in the United States.  Contractor shall have the right to select, hire and discharge such employees, but Contractor agrees to remove any such employee promptly upon Company's request for good cause shown. Contractor shall be solely responsible and liable for the health and safety of Contractor's employees.  Contractor will unilaterally determine and pay when due all salaries, wages, fringe benefits and other forms of compensation, and insurance, as well as all payroll taxes and other fees or charges levied or assessed under any Federal, state or local law or regulation  Contractor will further comply with all Federal and state laws, executive orders and regulations pertaining to hours or employment, payment of wages and non-discrimination in employment, as well as all other Federal, state and local laws, rules and regulations applicable to the services performed hereunder.  Company may from time to time require Contractor to provide evidence satisfactory to Company that Contractor has complied with the provisions of this article 4(b).

(c)    Contractor shall not sub-contract the Services herein without the express written consent of Company.

(d)    Contractor shall provide to Company Contractor's Federal Identification Number for payment and tax purposes. COMPANY WILL NOT BE ABLE TO PAY CONTRACTOR WITHOUT SAID IDENTIFICATION

(e)     Contractor shall defend, indemnify and hold harmless Company and its members, affiliates, subsidiaries, joint venture partners, and their respective officers, directors, employees and agents, against any and all expense, liability and claims, including but not limited to taxes, penalties and interest, resulting from Contractor's failure to comply with the provisions of this article 4.

5.     COMPENSATION TO CONTRACTOR     (a)     In consideration of Contractor's Services undertaken herein, Company will pay Contractor a commission per market ("Commission"). Contractor's Commission shall be three cents per gallon ($0.30 cpg) for each market and shall be tied to Contractor's Sales Code provided by Citigroup. Citigroup provides data (sales) to Company on or about the 15th day of the following month. The Commission will be calculated and used for the following month after.  For example, January's sales data will be received by Company on or about February 15th and the commission on these sales will be paid on March 15th and March 30th

(b)     The Commission will be prorated for any period less than a month. The Commission may be adjusted during the term of this Agreement with the written consent of both parties. Company shall pay Contractor fifty percent (50%) of the Commission on every fifteenth (15th) day of the month and fifty percent (50%) of the Commission on every thirtieth (30th) day of the month.  Company shall pay all taxes due direct to the state, if applicable.  Contractor and its employees are expressly exempted from all of Company's employee benefits.

6.     INDEMNIFICATION.(A)     TO THE EXTENT PERMITTED BY LAW, CONTRACTOR SHALL INDEMNIFY AND DEFEND COMPANY, ITS MEMBERS, SUBSIDIARIES, AFFILIATES AND JOINT VENTURE PARTNERS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS ("INDEMNIFIED PARTIES") AGAINST ALL CLAIMS, DEMANDS, CAUSES OF ACTION, SUITS, DAMAGES, JUDGMENTS, LIENS, PENALTIES, AND EXPENSES INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND LITIGATION COSTS, WHETHER INCURRED FOR AN INDEMNIFIED PARTY'S PRIMARY DEFENSE OR FOR ENFORCEMENT OF ITS INDEMNIFICATION RIGHTS (COLLECTIVELY, "CLAIM"), INCLUDING, WITHOUT LIMITATION, ANY CLAIM FOR HARM, INJURY, OR DEATH TO ANY PERSON, OR DAMAGE TO PROPERTY ARISING OUT OF OR IN CONNECTION WITH ANY OF THE FOLLOWING MATTERS:

(1)     CONTRACTOR'S PERFORMANCE OR NONPERFORMANCE OF SERVICES HEREUNDER;

(2)     ANY ACTION OR OMISSION OF CONTRACTOR, CONTRACTOR'S EMPLOYEES, AGENTS, CONTRACTORS, ASSIGNS OR THIRD PARTIES; AND

(3)     THE OPERATION OF CONTRACTOR'S BUSINESS.

CONTRACTOR'S OBLIGATION TO INDEMNIFY AND DEFEND EXTENDS TO ANY CLAIM CAUSED BY THE CONCURRENT OR CONTRIBUTORY NEGLIGENCE OR FAULT OF AN INDEMNIFIED PARTY BUT NOT TO ANY CLAIM SHOWN BY FINAL NONAPPEALABLE JUDGMENT TO HAVE BEEN CAUSED BY THE INDEMNIFIED PARTY'S SOLE NEGLIGENCE.

(B)     WITHIN 24 HOURS AFTER THE OCCURRENCE OF WHICH MAY RESULT IN A CLAIM, CONTRACTOR SHALL REPORT THE SAME TO COMPANY BY TELEPHONE AND SHALL PROMPTLY THEREAFTER CONFIRM THE SAME BY WRITTEN NOTICE, INCLUDING ALL CIRCUMSTANCES THEREOF KNOWN TO CONTRACTOR OR CONTRACTOR'S EMPLOYEES.

(C)     PROMPTLY AFTER RECEIVING NOTICE, AT CONTRACTOR'S EXPENSE, CONTRACTOR SHALL INVESTIGATE, RESPOND TO, AND DEFEND ANY CLAIM ASSERTED AGAINST ANY INDEMNIFIED PARTY, INCLUDING, WITHOUT LIMITATION, ANY CLAIM ALLEGING THE INDEMNIFIED PARTY'S SOLE NEGLIGENCE. THE INDEMNIFIED PARTY MAY PARTICIPATE IN THE DEFENSE AND SETTLEMENT OF ANY CLAIM OR LITIGATION WITH ATTORNEYS OF THE INDEMNIFIED PARTY'S SELECTION WITHOUT RELIEVING CONTRACTOR OF ANY OBLIGATIONS UNDER THIS ARTICLE.  COMPANY SHALL REIMBURSE CONTRACTOR FOR THE AMOUNT OF ANY JUDGMENT AND REASONABLE DEFENSE COSTS PAID BY CONTRACTOR WHICH REPRESENTS THE TOTAL LIABILITY FOUND BY FINAL NONAPPEALABLE JUDGMENT TO HAVE BEEN CAUSED BY THE INDEMNIFIED PARTY'S SOLE NEGLIGENCE.

(D)    CONTRACTOR'S OBLIGATIONS UNDER THIS ARTICLE SURVIVE TERMINATION OR NONRENEWAL OF THIS AGREEMENT.

7    COMPANY'S IDENTIFICATION Since this Agreement only relates to Contractor's performance of personnel services, no provision hereof shall be construed to grant to Contractor any right to use trademarks, brand names, service marks or color schemes owned by or licensed to Company ("Company's Identifications").

8    GOODWILL.    Contractor acknowledges and agrees that all goodwill, present and future, related to the Services herein, is and will remain Company property.

9    WORK PRODUCT    (a)    Contractor acknowledges that Company's rights of ownership to the work product, including technical data, developed by Contractor during performance of the Services herein ("Work Product"), are limited to such Work Product which is the result of the Work Product of the work performed by Contractor specifically under this Agreement

(b)    To the extent that Work Product developed and furnished by Contractor to Company under this Agreement is directly related to Company's requirements, such Work Product shall, upon acceptance by Company, become the property of Company. Contractor agrees that no information concerning such Work Product, or Company's plans concerning the use thereof, shall be divulged or disclosed by Contractor to third parties without the advanced written consent of Company. The obligations contained in the previous sentence shall survive termination or expiration of this Agreement

(c)    All programs, specifications, calculations, estimates, and other documents ("Documents") furnished by Company to Contractor or produced by Contractor under this Agreement are Company's property and shall be delivered to Company upon request. Company shall have the right to disclose or use the Documents in any manner it wishes without limitation.

10    QUALITY.    Both parties shall work together to ensure that all requirements are clearly understood and agreed to, as provided for in this Agreement so that conformance to requirements will be achieved and work will be done right the first time.

11.    EQUAL OPPORTUNITY.    Without limitation of its obligations under the foregoing provisions, Contractor shall comply with all equal opportunity requirements under any Federal, state or local law or regulation, including but not limited to, Executive Order 11246, as amended; the Vietnam Era Veterans Readjustment Assistance Act of 1974, as amended; Section 503 of the Rehabilitation Act of 1973, as amended; Executive Order 11625, as amended; Executive Order 12138, as amended, and the Small Business Act, as amended, as they may apply to the services performed hereunder.

12.    ASSIGNMENT. This Agreement is personal to Contractor  Contractor shall not assign Contractor's interest in this Agreement without Company's prior written consent. No consent to any assignment shall constitute a further waiver of the provisions of this article. Any assignment made without Company's prior written consent or otherwise in violation of this Agreement shall be null and void. Company may assign this Agreement with prior written notice to Contractor.

13    AUDIT Contractor shall maintain accurate records pertaining to all work performed hereunder and all transactions related thereto and agrees to retain all such records for not less than four (4) years after completion of the Services performed hereunder. Company may audit any and all records of Contractor, at any time (but no less than once per quarter). relative to the Services performed hereunder and all transactions related thereto for the purpose of determining whether there has been compliance with this Agreement.

14.    CONFIDENTIALITY.    Contractor acknowledges that during the term of this Agreement and any extension thereafter, Contractor will receive information and documents that are proprietary or confidential in nature including, but not limited to the terms in this Agreement, any accompanying procedures or manuals, and any attached Exhibits. Contractor agrees not to disclose any information connected to the operation of this Agreement without the prior written consent of Company. This Article 15 shall survive termination of this Agreement.

15.   EXCUSES FOR NONPERFORMANCE.  Either Company or Contractor shall be excused from its obligations under this Agreement (except financial) to the extent that performance is delayed or prevented by any circumstances reasonably beyond such party's control; or by fire, explosion, mechanical breakdown, strikes or other labor trouble, plant shutdown, plant maintenance, riots or other civil disturbances, or voluntary or involuntary compliance with any law, order, regulation or request of any governmental authority.

16   SEVERABILITY.  If for any reason a provision or provisions contained in this Agreement are held to be invalid, illegal or otherwise void, the remaining provisions of this Agreement shall continue in full force and effect.

17.   WAIVER   The rights of either party to require strict performance by the other of any or all obligations imposed on the other by this Agreement shall not in any way be affected by any previous waiver, forbearance or course of dealing

18.   NOTICES.   (a)   Except as otherwise specified in this Agreement, all notices must be in writing and in compliance with applicable law.  Subject to any requirements of law, any notice may be given to Contractor by personal service or by electronic mail or to either party by certified mail, regular mail, telegram, facsimile, mailgram, or overnight or local courier. Notice will be deemed given when: (1) deposited in the U.S. Mail, postage or charges pre-paid and directed to the party for whom intended at the address in such other address as directed by the party upon written notice to the other if given by certified mail or regular mail; (2) deposited with the dispatching agency, postage or charges pre-paid and directed to the party for whom intended at the address in this Agreement or such other address as directed by the party upon written notice to the other if given by telegram, mailgram or overnight or local courier; (3) confirmation is received by the sending party if given by facsimile; or (4) Company is electronically notified by its electronic mail provider or program of delivery to Contractor if given by electronic mail.

(b)   To enable Company to send notices and communication to Contractor by electronic mail, Contractor shall have at all times during the term of this Agreement an active E mail address and account with no storage limitations, and Contractor shall promptly advise Company of such address and of any change thereto.

19.   GOVERNING LAW.   This Agreement and the performance hereunder shall be governed by the laws of the State of Texas, without regard to the conflicts of laws principles therein.

20.   ENTIRETY--EXECUTION--SUCCESSORS.  This Agreement terminates, as of its effective date, any prior agreement or order between Company and Contractor relating to personal services at the Location, and merges and supersedes all prior representations and agreements, and constitutes the entire contract between Company and Contractor concerning the subject matter or in consideration hereof.  Neither this Agreement nor any subsequent agreement amending or supplementing this Agreement shall be binding on Company unless and until it is signed for Company by a duly authorized representative. Subject to the foregoing provisions hereof, this Agreement shall bind and benefit Contractor's heirs, estate and permitted assigns, and Company's successors and assigns.

Executed on the date shown below.

**SHELL OIL PRODUCTS US**                    **SAMUEL ST. JAMES**

By: _____ _____  _____               _____

Title: Sales Manager___  _____

Date: February 24, 2005                     Print or Type Name

                                            Date:    _____ , 2005



1  WILSON PETTY KOSMO & TURNER LLP
   ROBIN A. WOFFORD (137919)
2  HUBERT KIM (204957)
   550 West C Street, Suite 1050
3  San Diego, California  92101
   Telephone:  (619) 236-9600
4  Facsimile:  (619) 236-9669
   E-mail:  rwofford@wpkt.com
5  E-mail:  hkim@wpkt.com

6  Attorneys for Defendant EQUILON ENTERPRISES LLC
   dba SHELL OIL PRODUCTS US

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  SAMUEL ST. JAMES,                    Case No.  08 CV 0962 W (AJB)

12        Plaintiff,                     **PROOF OF SERVICE BY
                                         ELECTRONIC SUBMISSION**
13        v.
                                         Complaint Filed:  April 10, 2008
14  EQUILON ENTERPRISES, LLC, dba SHELL
    OIL PRODUCTS US; CITIGROUP BANK, and
15  DOES 1 through 20, INCLUSIVE,

16        Defendants.

17

18       I am familiar with the United States District Court, Southern District of California's practice

19  for collecting and processing electronic filings.  Under that practice, the following documents were

20  electronically filed with the court on June 6, 2008:

21
         **DEFENDANT EQUILON ENTERPRISE LLC'S NOTICE OF MOTION TO
22       DISMISS COMPLAINT OR IN THE ALTERNATIVE, MOTION FOR MORE
         DEFINITE STATEMENT;**
23
         **DEFENDANT EQUILON ENTERPRISES LLC'S MEMORANDUM OF
24       POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
         COMPLAINT OR IN THE ALTERNATIVE, MOTION FOR MORE
25       DEFINITE STATEMENT;**

26       **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT
         EQUILON ENTERPRISE LLC'S MOTION TO DISMISS COMPLAINT OR
27       IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT
         (with Exhibit 1);**
28

                                     1        Case No.  08 CV 0962 W (AJB)

1  **[PROPOSED] ORDER ON DEFENDANT EQUILON ENTERPRISE LLC'S**
   **MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE,**
2  **MOTION FOR MORE DEFINITE STATEMENT  (Sent by Electronic Mail**
   **only)**
3

4      The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing

5  party, the assigned judge, and any registered users in the case.  The NEF will constitute service of

6  the document(s).  Registration as a CM/ECF user constitutes consent to electronic service through

7  the court's transmission facilities.  Under said practice, the following CM/ECF users were served:

8
          Elliott N. Kanter, Esq.
9         Law Offices of Elliott N. Kanter
          2445 Fifth Avenue, Ste. 350
10        San Diego, CA 92101
          Tele:  619-231-1883
11        Fax:   619-234-4553
          *Attorney for Plaintiff*
12

13     I declare that I am employed by the office of a member of the bar of this court at whose

14  direction the service was made.

15     Executed June 6, 2008, at San Diego, California.

16

17

18                    By:    _____
                             Dana Y. Ibarra
19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE BY ELECTRONIC SUBMISSION**