ELLIOTT N. KANTER, ESQ.
LAW OFFICES OF ELLIOTT KANTER
2445 5TH AVENUE, SUITE 350
SAN DIEGO, CA 92101
TELEPHONE 619-231-1883
FACSIMILE 619-234-4553

Attorney for Plaintiff SAMUEL ST. JAMES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

HONORABLE THOMAS J. WHELAN

| | |
|---|---|
| SAMUEL ST. JAMES,<br><br>    Plaintiff,<br><br>v.<br><br>EQUILON ENTERPRISES, LLC, dba SHELL OIL PRODUCTS US; CITIBANK (SOUTH DAKOTA), N.A.<br><br>    Defendants. | Case No.: 08 CV 0962 W (AJB)<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:**<br>  1. BREACH OF CONTRACT<br>  2. BAD FAITH BREACH OF CONTRACT<br>  3. UNJUST ENRICHMENT<br>  4. DECLARATORY RELIEF<br>  5. CONTRUCTIVE TRUST<br>  6. FRAUD AND REQUEST FOR CONSTRUCTIVE TRUST;<br>  7. NEGLIGENCE<br>  8. INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE<br>  9. UNFAIR BUSINESS PRACTICES<br>  10. UNLAWFUL TERMINATION OF FRANCHISE (15 USC §2801 ET SEQ.)<br>  11. ATTORNEY'S FEES AND COSTS<br><br>**Plaintiff hereby demands trial by jury.** |

Plaintiff SAMUEL ST. JAMES alleges:

1. Plaintiff is and was at all times mentioned herein a citizen of the State of California.

2. Pursuant to Defendant's Notice of Removal of Action Under 28 U.S.C. §1441 (Diversity) filed with this Court on May 30, 2008, Plaintiff is informed and believes that Defendant Equilon Enterprises LLC, dba Shell Oil Products US (hereinafter "Equilon") is a limited liability organized and existing under the laws of the State of Delaware, with principal place of business located in the State of Texas.

3. Plaintiff is further informed and believes that Equilon's two member entities are incorporated or organized under the laws of states other than California: (1) SOPC Holdings West LLC (hereinafter "SOPC") is a limited liability company organized and existing under the laws of the State of Delaware with principal place of business located in the State of Delaware. SOPC has two members: Shell Oil Products Company LLC, a limited liability company organized and existing under the laws of the State of Delaware with principal place of business located in the State of Texas; and, Shell Oil Company, a corporation organized and existing under the laws of the State of Delaware, with principal place of business located in the State of Texas. (2) TMR Company, a corporation organized and existing under the laws of the State of Delaware with principal place of business located in the State of Texas.

4. Plaintiff is further informed and believes that Defendant Citibank (South Dakota), N.A. (hereinafter "Citibank") is a national bank organized under the laws of the United States with principal place of business in Sioux Falls, South Dakota.

5. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein each of the Defendants was the agent, servant, independent contractor, partner, alter ego, successor and/or employee of his Co-Defendants, and in doing the acts hereinafter mentioned, was acting in the scope of his authority as such agent, servant, independent contractor, partner, alter ego, successor and/or employee and with the permission and consent and ratification of said Co-Defendants, and each of them.

6. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

/ / / /

## PRELIMINARY ALLEGATIONS

7. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.

8. The subject of this action is a contract entered into by Plaintiff and Defendant Equilon.

9. An agreement (hereinafter "the Agreement") was reached on February 24, 2005, wherein Defendant hired Plaintiff as a contractor. A copy of the Agreement is attached as Exhibit "A".

10. Pursuant to the Agreement, Plaintiff was hired to sell the Shell Fleet Credit Card as an independent contractor.

11. Pursuant to the Agreement, the sales Plaintiff made were to be tied to a contractor's sales code, so that Plaintiff could be rightfully compensated.

12. Plaintiff seeks to receive an accounting and an appropriate portion of his interest in his salary and commissions.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
## (AS TO ALL DEFENDANT EQUILON)

13. Plaintiff hereby incorporates each and every paragraph of the Preliminary Allegation as though set forth fully herein.

14. Plaintiff entered into the Agreement with Equilon on or about February 24, 2005. It was agreed that Plaintiff would be hired as an independent contractor. In turn, Plaintiff was to receive all of his commissions and income for all of Plaintiff's sales.

15. Equilon failed to properly compensate Plaintiff. As such, Equilon breached the Agreement entered into on or about February 25, 2005.

16. Plaintiff has performed all the conditions, covenants, and promises required by him to be performed in accordance with the terms and conditions of the Agreement.

17. Equilon impeded Plaintiff from earning income by preventing the gain or alternatively delaying the creation of new accounts, as well as retaining current levels

of business through actions such as unnecessary delays in approving credit for new accounts.

18. Equilon impeded Plaintiff from earning income by preventing the gain or alternatively delaying the creation of new accounts, as well as retaining current levels of business through actions such as the unnecessary tardy billing process.

19. Equilon did not compensate Plaintiff according to the Agreement, Section 5, where Plaintiff was to receive commissions for each market as tied to a contractor's sales code provided by Citibank.

20. As a direct legal and/or proximate result of Defendants' and Does' 1 through 20, inclusive, breach of the Agreement, Plaintiff has been damaged in a sum to be proven at trial which includes, but is not limited to, actual damages, attorneys fees and costs of suit.

## SECOND CAUSE OF ACTION
## BAD FAITH BREACH OF CONTRACT
## (AS TO DEFENDANT EQUILON)

21. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.

22. The contract entered into by Plaintiff and Defendant Equilon was unconscionable in that it provided Equilon the power to add or delete markets to the Agreement unilaterally, with only prior written notice to the contractor required. This unilateral power to restrict the market was unfair to Plaintiff.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT
## (AS TO DEFENDANT EQUILON)

23. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.

24. Plaintiff seeks to obtain his commissions and income acquired by Equilon for each sale he made.

25. If Equilon were allowed to keep the entirety of the proceeds without giving Plaintiff his portion, Equilon would be unjustly enriched.

26. Equilon failed to provide Plaintiff with all of his shares of the sales proceeds. As such, Equilon has been unjustly enriched.

27. Defendants are still benefitting from and receiving income from the work that Plaintiff did in soliciting and signing on companies for the Shell Credit Card Services. Therefore, Plaintiff requests an accounting of all proceeds from sales from his accounts following his termination, and payment of commissions based upon those sales.

## FOURTH CAUSE OF ACTION
## DECLARATORY RELIEF
## (AS TO DEFENDANT EQUILON)

28. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.

29. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in that Plaintiff contends he is entitled to his income and commission of his sales following his termination.

30. Plaintiff desires a judicial determination of his rights and duties and a declaration as to the right of reimbursement from the proceeds.

31. A judicial declaration is necessary and appropriate at this time under the circumstances in order for Plaintiff to ascertain his rights and duties regarding the proceeds of his sales.

## FIFTH CAUSE OF ACTION
## CONSTRUCTIVE TRUST ARISING FROM BREACH OF FIDUCIARY DUTY
## (AS TO DEFENDANT EQUILON)

32. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.

33. Plaintiff and Equilon entered into the Agreement wherein Plaintiff was hired as an independent contractor.

34. The goal of the Agreement was to hire Plaintiff as an independent contractor to sell of "sign on" clients for credit accounts for the purpose of making and recognizing a profit therefrom.

35. It was expressly agreed that Equilon would compensate Plaintiff through commissions from the sales. Plaintiff and Defendant would both benefit from the sales made by Plaintiff.

36. It was then agreed in 2005 that Equilon would pay Plaintiff for all of his sales.

37. As a result of the Agreement to hire Plaintiff a fiduciary duty was formed.

38. A fiduciary relationship was formed here between Plaintiff and each of the Defendants. The specific duties the partners owe to each other are set forth in California Corporations Code Section 16404 and include the duty of loyalty and the duty of care. Plaintiff alleges a breach of this fiduciary duty as well as the others contained in said code section based on the following and aforementioned facts.

39. The proceeds of the sales have not been transferred to Plaintiff.

40. A constructive trust is a proper remedy where Plaintiff is seeking recovery, where the cause of action is based on actions which consist of fraud, breach of fiduciary duty or other acts that entitle Plaintiff to relief.

41. Equilon breached its fiduciary duty to its independent contractor, Plaintiff, by not properly providing the proceeds of the sale of the business as stated above.

42. It is requested the Court impose a constructive trust over the proceeds of the sales made by Plaintiff.

## SIXTH CAUSE OF ACTION
## FRAUD AND REQUEST FOR CONSTRUCTIVE TRUST
## (AS TO DEFENDANT EQUILON)

43. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.

44. Plaintiff and Equilon entered into the Agreement to profit from Plaintiff's sales made on behalf of Equilon.

45. Fraud must be specifically alleged; "a party must state with particularity the circumstances constituting fraud or mistake." (Federal Rule Civ. Proc. 9(b).)

46. Plaintiff alleges that the Agreement was reached between himself and Equilon, wherein Plaintiff was to have and receive all of his interest in monies paid by the sales he made.

47. This was specifically told to him or affirmed to him by Equilon executives, including Steve Brommer, who was Equilon's executive who signed the Agreement on behalf of Equilon.

48. The discussions and correspondence between Plaintiff and Equilon, including Steve Brommer, concerning Plaintiff receiving his share of the sales he would make took place in 2005, prior to the March 1, 2005 execution date of the Agreement.

49. The representations made by Equilon were false representations in that there was not at the time they were made any intention to relinquish funds from Plaintiff's sales proceeds.

50. Equilon knew when they made the above-referenced representations to Plaintiff that said representations were not true. Moreover, there was no intention at the time to provide Plaintiff with his interest as represented above.

51. Equilon intended Plaintiff to rely to his detriment, so they could keep Plaintiff's portion of sales proceeds, and future sales proceeds following Plaintiff's termination.

52. Plaintiff reasonably relied on these representations to his detriment and has been damaged as a result.

53. Plaintiff seeks money damages for the Equilon's actions, as well as that a constructive trust be imposed as to the proceeds of the sales, in an amount to be determined following analysis of Equilon's financial information.

### SEVENTH CAUSE OF ACTION
### NEGLIGENCE
### (AS TO ALL DEFENDANTS)

54. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.
55. The Defendants had a duty to act reasonably to service Plaintiff's accounts.
56. The Defendants by and through their actions breached the duty owed to Plaintiff to act reasonably for the care and safety of Plaintiff.
57. The Defendants failed to properly provide for accurate and diligent servicing of Plaintiff's accounts, due to their faulty or tardy billing and other administrative procedures. This failure to properly service Plaintiff's accounts caused Plaintiff to lose substantial contracts with several major accounts, and constituted a breach of the Defendants' duty to act reasonably for the care and safety of Plaintiff.
58. As a result of the Defendants' failure to act reasonably for the care and safety of Plaintiff, Plaintiff was injured and sustained harm, specifically the loss of his interest in the commissions of the proceeds of subject sales.

**EIGHTH CAUSE OF ACTION**
**INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**
**(AS TO ALL DEFENDANTS)**

59. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.
60. An agreement existed between Equilon and Plaintiff whereby Plaintiff would be entitled to his commissions.
61. Defendants knew that Plaintiff had made said agreement with Equilon.
62. Defendants each intended to and did disrupt the performance of the Agreement by the other Defendants.
63. As a result the Defendants caused Plaintiff to lose proceeds from his sales.
64. Plaintiff was harmed in that he did not receive his proceeds.
65. Defendants' conduct in interfering with the contract with Plaintiff, including Citibank's negligence in processing sales data, was a substantial factor in the causing of harm to Plaintiff.

## NINTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES
## (AS TO ALL DEFENDANTS)

66. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.

67. Plaintiff's pay was changed to commission based pay and subsequently Equilon decreased Plaintiff's commission rates.

68. Defendant Equilon informed Plaintiff that the Phoenix market was closing. Equilon's offer to buy gallons sold in the Phoenix territory with 3 months' compensation was taking advantage of Plaintiff's position and lack of access to information regarding the potential sale.

69. Plaintiff was then wedged out of all of his markets by Equilon, in that his commission rates and territories were gradually reduced, and Plaintiff was ultimately terminated by Equilon.

## TENTH CAUSE OF ACTION
## UNLAWFUL TERMINATION OF FRANCHISE (15 U.S.C. §§2801 ET SEQ.)
## (AS TO DEFENDANT EQUILON)

70. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.

71. The Agreement created a franchise for Plaintiff, pursuant to the Petroleum Marketers' Practices Act, 15 U.S.C. §§2801(1)(B)(ii)(I).

72. Equilon is a "refiner" or "distributor" pursuant to 15 U.S.C. §§2801(5) and (6).

73. Plaintiff is an "affiliate" of Equilon, pursuant to 15 U.S.C. §2801(15).

74. Equilon terminated the Agreement on June 1, 2007, in violation of 15 U.S.C. §§2802(a)(1) and (2).

75. Plaintiff fulfilled all requirements of the Agreement. There were no grounds for termination pursuant to 15 U.S.C. §2802.

76. Plaintiff requests both equitable relief and damages to be proven, pursuant to 15 U.S.C. §2805.

### ELEVENTH CAUSE OF ACTION
### ATTORNEY'S FEES AND COSTS
### (AS TO ALL DEFENDANTS)

77. Plaintiff hereby incorporates each and every foregoing paragraph as though set forth fully herein.

78. Plaintiff has incurred substantial attorney's fees and costs in pursuing this action against Defendants.

79. Plaintiff requests an award of all of his attorney's fees and costs at the time of Judgment.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. For a determination by the Court that Plaintiff is entitled to his commissions.

2. For an order and judgment that the commissions that belong to Plaintiff be paid, together with the costs and expenses of this action to Plaintiff in accordance with interest.

3. For pre-judgment interest.

4. For general damages according to proof.

5. For special damages according to proof, as requested hereinabove.

6. For attorney fees according to proof.

7. For such further relief as the court considers proper.

Dated: July 15, 2008         /s/ Elliott N. Kanter
                             ELLIOTT N. KANTER
                             ekanter1@san.rr.com
                             Law Offices of Elliott N. Kanter APC
                             2445 Fifth Avenue, Suite 350
                             San Diego, CA 92101
                             Attorney for Plaintiff SAMUEL ST. JAMES

# EXHIBIT "A"

Exhibit "A"



## CONTRACTOR AGREEMENT

THIS IS AN AGREEMENT ("Agreement") effective March 1, 2005 between Equilon Enterprises LLC, d/b/a Shell Oil Products US ("Company"), whose address is 12700 Northborough Drive, Houston, TX and Samuel St. James ("Contractor"), with a mailing address at P.O. Box 84652, San Diego, California 92138. This Agreement will supercede the Agreement entered into by the Parties on June 1, 2003 in all respects.

1. SCOPE. Contractor shall provide Fleet Card Solicitation Services ("Services") to Company in the following California Markets: LA County, San Bernardino, High Dessert, Riverside, Ventura County, Santa Barbara, San Louis Obispo, Orange County, and San Diego ("Markets"). Company may add or delete Markets to this Agreement by prior written notice to Contractor. Contractor shall be ethical, courteous, fair, and efficient at all times when soliciting business for Company.

2. TERM. This Agreement shall be binding from execution and shall be in effect for a term of one (1) year beginning on the effective date hereof, and shall be automatically renewed for successive one year terms, unless sooner terminated pursuant to the provisions of this article 2 or other provisions of this Agreement. Either Company or Contractor may terminate this Agreement either in its entirety or for a particular Market, at any time and for any reason or no reason at all, by giving the other at least two (2) days advance written notice.

3. DEFAULT -- CURE. (a) Notwithstanding article 2 of this Agreement, if Contractor defaults in the performance of any covenant or condition of this Agreement (outside this article 3), or fails to follow operating procedures (either attached as exhibits to this Agreement or distributed separately by Company), and as to any such default which can be cured, fails to remedy or begin to remedy same within ten (10) days after the Company gives notice thereof to the Contractor, Company may terminate this Agreement.

(b) In the event Company terminates this Agreement in one or all markets without cause, Company shall pay Contractor three (3) months worth of Commission (as defined under Section 5) based on the previous months' sale of gallons in that market(s).

4. RELATIONSHIP OF PARTIES. (a) Nothing in this Agreement shall be construed as reserving to Company any right to exercise any control over, or to direct in any respect Contractor's performance of services hereunder; but the entire control and direction of such services shall be and remain in Contractor, subject only to Contractor's performance of the obligations of this Agreement. It is expressly understood and agreed that it is not the purpose or intention of this Agreement to create between the parties hereto, nor shall the same be construed as creating, nor shall Company or Contractor ever assert that this Agreement creates or created the relation of employer and employee, co-employer or joint employer, any type of partnership relationship, a landlord-tenant relationship, a franchise relationship under the Federal Petroleum Marketing Practices Act or any state franchise laws, or any joint venture. Neither Contractor nor any person performing any duties or engaged in any work pursuant to this Agreement for or on behalf of Contractor is authorized to impose on Company any obligations or liability whatsoever except as expressly provided herein. It is the intent of the parties under this Agreement to create an Independent Contractor relationship between Company and Contractor.

(b) All personnel furnished by Contractor for its performance of services hereunder shall be the employees of Contractor and must be eligible to work in the United States. Contractor shall have the right to select, hire and discharge such employees, but Contractor agrees to remove any such employee promptly upon Company's request for good cause shown. Contractor shall be solely responsible and liable for the health and safety of Contractor's employees. Contractor will unilaterally determine and pay when due all salaries, wages, fringe benefits and other forms of compensation, and insurance, as well as all payroll taxes and other fees or charges levied or assessed under any Federal, state or local law or regulation. Contractor will further comply with all Federal and state laws, executive orders and regulations pertaining to hours or employment, payment of wages and non-discrimination in employment, as well as all other Federal, state and local laws, rules and regulations applicable to the services performed hereunder. Company may from time to time require Contractor to provide evidence satisfactory to Company that Contractor has complied with the provisions of this article 4(b).

(c) Contractor shall not sub-contract the Services herein without the express written consent of Company.

(d) Contractor shall provide to Company Contractor's Federal Identification Number for payment and tax purposes. COMPANY WILL NOT BE ABLE TO PAY CONTRACTOR WITHOUT SAID IDENTIFICATION.

(e) Contractor shall defend, indemnify and hold harmless Company and its members, affiliates, subsidiaries, joint venture partners, and their respective officers, directors, employees and agents, against any and all expense, liability and claims, including but not limited to taxes, penalties and interest, resulting from Contractor's failure to comply with the provisions of this article 4.

5. COMPENSATION TO CONTRACTOR. (a) In consideration of Contractor's Services undertaken herein, Company will pay Contractor a commission per market ("Commission"). Contractor's Commission shall be three cents per gallon ($0.30 cpg) for each market and shall be tied to Contractor's Sales Code provided by Citigroup. Citigroup provides data (sales) to Company on or about the 15th day of the following month. The Commission will be calculated and used for the following month after. For example, January's sales data will be received by Company on or about February 15th and the commission on these sales will be paid on March 15th and March 30th.

(b) The Commission will be prorated for any period less than a month. The Commission may be adjusted during the term of this Agreement with the written consent of both parties. Company shall pay Contractor fifty percent (50%) of the Commission on every fifteenth (15th) day of the month and fifty percent (50%) of the Commission on every thirtieth (30th) day of the month. Company shall pay all taxes due direct to the state, if applicable. Contractor and its employees are expressly exempted from all of Company's employee benefits.

6. INDEMNIFICATION. (A) TO THE EXTENT PERMITTED BY LAW, CONTRACTOR SHALL INDEMNIFY AND DEFEND COMPANY, ITS MEMBERS, SUBSIDIARIES, AFFILIATES AND JOINT VENTURE PARTNERS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS ("INDEMNIFIED PARTIES") AGAINST ALL CLAIMS, DEMANDS, CAUSES OF ACTION, SUITS, DAMAGES, JUDGMENTS, LIENS, PENALTIES, AND EXPENSES INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND LITIGATION COSTS, WHETHER INCURRED FOR AN INDEMNIFIED PARTY'S PRIMARY DEFENSE OR FOR ENFORCEMENT OF ITS INDEMNIFICATION RIGHTS (COLLECTIVELY, "CLAIM"), INCLUDING, WITHOUT LIMITATION, ANY CLAIM FOR HARM, INJURY, OR DEATH TO ANY PERSON, OR DAMAGE TO PROPERTY ARISING OUT OF OR IN CONNECTION WITH ANY OF THE FOLLOWING MATTERS:

(1) CONTRACTOR'S PERFORMANCE OR NONPERFORMANCE OF SERVICES HEREUNDER;

(2) ANY ACTION OR OMISSION OF CONTRACTOR, CONTRACTOR'S EMPLOYEES, AGENTS, CONTRACTORS, ASSIGNS OR THIRD PARTIES; AND

(3) THE OPERATION OF CONTRACTOR'S BUSINESS.

CONTRACTOR'S OBLIGATION TO INDEMNIFY AND DEFEND EXTENDS TO ANY CLAIM CAUSED BY THE CONCURRENT OR CONTRIBUTORY NEGLIGENCE OR FAULT OF AN INDEMNIFIED PARTY BUT NOT TO ANY CLAIM SHOWN BY FINAL NONAPPEALABLE JUDGMENT TO HAVE BEEN CAUSED BY THE INDEMNIFIED PARTY'S SOLE NEGLIGENCE.

(B) WITHIN 24 HOURS AFTER THE OCCURRENCE OF WHICH MAY RESULT IN A CLAIM, CONTRACTOR SHALL REPORT THE SAME TO COMPANY BY TELEPHONE AND SHALL PROMPTLY THEREAFTER CONFIRM THE SAME BY WRITTEN NOTICE, INCLUDING ALL CIRCUMSTANCES THEREOF KNOWN TO CONTRACTOR OR CONTRACTOR'S EMPLOYEES.

(C) PROMPTLY AFTER RECEIVING NOTICE, AT CONTRACTOR'S EXPENSE, CONTRACTOR SHALL INVESTIGATE, RESPOND TO, AND DEFEND ANY CLAIM ASSERTED AGAINST ANY INDEMNIFIED PARTY, INCLUDING, WITHOUT LIMITATION, ANY CLAIM ALLEGING THE INDEMNIFIED PARTY'S SOLE NEGLIGENCE. THE INDEMNIFIED PARTY MAY PARTICIPATE IN THE DEFENSE AND SETTLEMENT OF ANY CLAIM OR LITIGATION WITH ATTORNEYS OF THE INDEMNIFIED PARTY'S SELECTION WITHOUT RELIEVING CONTRACTOR OF ANY OBLIGATIONS UNDER THIS ARTICLE. COMPANY SHALL REIMBURSE CONTRACTOR FOR THE AMOUNT OF ANY JUDGMENT AND REASONABLE DEFENSE COSTS PAID BY CONTRACTOR WHICH REPRESENTS THE TOTAL LIABILITY FOUND BY FINAL NONAPPEALABLE JUDGMENT TO HAVE BEEN CAUSED BY THE INDEMNIFIED PARTY'S SOLE NEGLIGENCE.

(D) CONTRACTOR'S OBLIGATIONS UNDER THIS ARTICLE SURVIVE TERMINATION OR NONRENEWAL OF THIS AGREEMENT.

7. COMPANY'S IDENTIFICATION. Since this Agreement only relates to Contractor's performance of personnel services, no provision hereof shall be construed to grant to Contractor any right to use trademarks, brand names, service marks or color schemes owned by or licensed to Company ("Company's Identifications").

8. GOODWILL. Contractor acknowledges and agrees that all goodwill, present and future, related to the Services herein, is and will remain Company property.

9. WORK PRODUCT. (a) Contractor acknowledges that Company's rights of ownership to the work product, including technical data, developed by Contractor during performance of the Services herein ("Work Product"), are limited to such Work Product which is the result of the Work Product of the work performed by Contractor specifically under this Agreement.

(b) To the extent that Work Product developed and furnished by Contractor to Company under this Agreement is directly related to Company's requirements, such Work Product shall, upon acceptance by Company, become the property of Company. Contractor agrees that no information concerning such Work Product, or Company's plans concerning the use thereof, shall be divulged or disclosed by Contractor to third parties without the advanced written consent of Company. The obligations contained in the previous sentence shall survive termination or expiration of this Agreement.

(c) All programs, specifications, calculations, estimates, and other documents ("Documents") furnished by Company to Contractor or produced by Contractor under this Agreement are Company's property and shall be delivered to Company upon request. Company shall have the right to disclose or use the Documents in any manner it wishes without limitation.

10. QUALITY. Both parties shall work together to ensure that all requirements are clearly understood and agreed to, as provided for in this Agreement so that conformance to requirements will be achieved and work will be done right the first time.

11. EQUAL OPPORTUNITY. Without limitation of its obligations under the foregoing provisions, Contractor shall comply with all equal opportunity requirements under any Federal, state or local law or regulation, including but not limited to, Executive Order 11246, as amended; the Vietnam Era Veterans Readjustment Assistance Act of 1974, as amended; Section 503 of the Rehabilitation Act of 1973, as amended; Executive Order 11625, as amended; Executive Order 12138, as amended; and the Small Business Act, as amended, as they may apply to the services performed hereunder.

12. ASSIGNMENT. This Agreement is personal to Contractor. Contractor shall not assign Contractor's interest in this Agreement without Company's prior written consent. No consent to any assignment shall constitute a further waiver of the provisions of this article. Any assignment made without Company's prior written consent or otherwise in violation of this Agreement shall be null and void. Company may assign this Agreement with prior written notice to Contractor.

13. AUDIT. Contractor shall maintain accurate records pertaining to all work performed hereunder and all transactions related thereto and agrees to retain all such records for not less than four (4) years after completion of the Services performed hereunder. Company may audit any and all records of Contractor, at any time (but no less than once per quarter), relative to the Services performed hereunder and all transactions related thereto for the purpose of determining whether there has been compliance with this Agreement.

14. CONFIDENTIALITY. Contractor acknowledges that during the term of this Agreement and any extension thereafter, Contractor will receive information and documents that are proprietary or confidential in nature including, but not limited to the terms in this Agreement, any accompanying procedures or manuals, and any attached Exhibits. Contractor agrees not to disclose any information connected to the operation of this Agreement without the prior written consent of Company. This Article 15 shall survive termination of this Agreement.

15. EXCUSES FOR NONPERFORMANCE. Either Company or Contractor shall be excused from its obligations under this Agreement (except financial) to the extent that performance is delayed or prevented by any circumstances reasonably beyond such party's control; or by fire, explosion, mechanical breakdown, strikes or other labor trouble, plant shutdown, plant maintenance, riots or other civil disturbances, or voluntary or involuntary compliance with any law, order, regulation or request of any governmental authority.

16. SEVERABILITY. If for any reason a provision or provisions contained in this Agreement are held to be invalid, illegal or otherwise void, the remaining provisions of this Agreement shall continue in full force and effect.

17. WAIVER. The rights of either party to require strict performance by the other of any or all obligations imposed on the other by this Agreement shall not in any way be affected by any previous waiver, forbearance or course of dealing.

18. NOTICES. (a) Except as otherwise specified in this Agreement, all notices must be in writing and in compliance with applicable law. Subject to any requirements of law, any notice may be given to Contractor by personal service or by electronic mail or to either party by certified mail, regular mail, telegram, facsimile, mailgram, or overnight or local courier. Notice will be deemed given when: (1) deposited in the U.S. Mail, postage or charges pre-paid and directed to the party for whom intended at the address in this Agreement or such other address as directed by the party upon written notice to the other if given by certified mail or regular mail; (2) deposited with the dispatching agency, postage or charges pre-paid and directed to the party for whom intended at the address in this Agreement or such other address as directed by the party upon written notice to the other if given by telegram, mailgram or overnight or local courier; (3) confirmation is received by the sending party if given by facsimile; or (4) Company is electronically notified by its electronic mail provider or program of delivery to Contractor if given by electronic mail.

(b) To enable Company to send notices and communication to Contractor by electronic mail, Contractor shall have at all times during the term of this Agreement an active E-mail address and account with no storage limitations, and Contractor shall promptly advise Company of such address and of any change thereto.

19. GOVERNING LAW. This Agreement and the performance hereunder shall be governed by the laws of the State of Texas, without regard to the conflicts of laws principles therein.

20. ENTIRETY--EXECUTION--SUCCESSORS. This Agreement terminates, as of its effective date, any prior agreement or order between Company and Contractor relating to personnel services at the Location, and merges and supersedes all prior representations and agreements, and constitutes the entire contract between Company and Contractor concerning the subject matter or in consideration hereof. Neither this Agreement nor any subsequent agreement amending or supplementing this Agreement shall be binding on Company unless and until it is signed for Company by a duly authorized representative. Subject to the foregoing provisions hereof, this Agreement shall bind and benefit Contractor's heirs, estate and permitted assigns, and Company's successors and assigns.

Executed on the date shown below.

**SHELL OIL PRODUCTS US**

By: _____

Title: Sales Manager

Date: February 24, 2005

**SAMUEL ST. JAMES**

_____
Print or Type Name

Date: _____, 2005

**SUMMONS** ON FIRST AMENDED COMPLAINT
*(CITACION JUDICIAL)*

SUM-100

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
EQUILON ENTERPRISES, LLC, dba SHELL OIL PRODUCTS US;
CITIGROUP BANK (SOUTH DAKOTA), N.A.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SAMUEL ST. JAMES

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
  Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
UNITED STATES DISTRICT COURT
Attention: Honorable Thomas J. Whelan
Courtroom 7
940 Front Street
San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):* 08 CV 0962 W (AJB)

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
ELLIOTT N. KANTER ESQ., CSB#95054         619-231-1883         619-234-4553
LAW OFFICES OF ELLIOTT N. KANTER
2445 Fifth Avenue, Suite 350
San Diego, CA 92101

DATE:                                        Clerk, by _____, Deputy
*(Fecha)*                                    *(Secretario)*                                *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**
ON FIRST AMENDED COMPLAINT

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF CALIFORNIA | FOR COURT USE ONLY |
|---|---|
| **TITLE OF CASE (Abbreviated):**<br>SAMUEL ST. JAMES vs. EQUILON ENTERPRISES, LLC, et al. | |
| **ATTORNEY(S) NAME AND ADDRESS:**<br>Elliott N. Kanter, Esq. (SBN 95054)    Tel: (619) 231-1883<br>LAW OFFICES OF ELLIOTT N. KANTER    Fax: (619) 234-4553<br>2445 5th Avenue, Suite 350<br>San Diego, CA  92101 | |

| **ATTORNEY(S) FOR:**<br>Plaintiff, SAMUEL ST. JAMES | **HEARING: DATE-TIME-DEPT** | **CASE NUMBER**<br>08 CV 0962 W (AJB) |
|---|---|---|

# CERTIFICATE OF SERVICE

I declare that I am employed with the law firm of Elliott N. Kanter, whose address is 2445 Fifth Avenue, Suite 350, San Diego California 92121. I am not a party to the within cause, and I am over the age of 18 years.

Pursuant to USCIT R. 5 and Paragraphs 5 and 6 of Administrative Order 02-01 of the U.S. Court of International Trade, I caused service of the following document(s):

(1)   SUMMONS ON FIRST AMENDED COMPLAINT;

(2)   PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
      (1)   BREACH OF CONTRACT
      (2)   BAD FAITH BREACH OF CONTRACT
      (3)   UNJUST ENRICHMENT
      (4)   DECLARATORY RELIEF
      (5)   CONSTRUCTIVE TRUST
      (6)   FRAUD AND REQUEST FOR CONSTRUCTIVE TRUST
      (7)   NEGLIGENCE;
      (8)   INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
      (9)   UNFAIR BUSINESS PRACTICES
    (10)   UNLAWSUL TERMINATION OF FRANCHISE (15 USC §2801 ET SEQ.)
    (11)   ATTORNEY'S FEES AND COSTS

**By electronic filing with the Clerk of the Court on July 15, 2008, using the CM/ECF System,** which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have filed a Notice of Consent to Electronic Service in this action, to include the following:

WILSON PETTY KOSMO & TURNER, LLP
ROBIN A. WOFFORD
HUBERT KIM
550 West C Street, Suite 1050
San Diego, CA  92101

Counsel Defendant, EQUILON ENTERPRISES LLC dba SHELL OIL PRODUCTS US

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and was executed on July 15, 2008 at San Diego, California.

                                            /s/ Anita Kranzberg
                                            Anita Kranzberg