1  ELLIOTT N. KANTER, ESQ.
   LAW OFFICES OF ELLIOTT KANTER
2  2445 5TH AVENUE, SUITE 350
   SAN DIEGO, CA 92101
3  TELEPHONE 619-231-1883
   FACSIMILE 619-234-4553
4
   Attorney for Plaintiff SAMUEL ST. JAMES
5

6

7

8
                    UNITED STATES DISTRICT COURT
9
                   SOUTHERN DISTRICT OF CALIFORNIA
10

11  SAMUEL ST. JAMES,                    )
                                         )   Case No.: 08 CV 0962 W (AJB)
12                                       )
                          Plaintiff,     )   **NOTICE OF OPPOSITION TO**
13                                       )   **DEFENDANT EQUILON ENTERPRISES**
         vs.                             )   **LLC'S MOTION TO DISMISS FIRST**
14                                       )   **AMENDED COMPLAINT OR IN THE**
                                         )   **ALTERNATIVE, MOTION FOR MORE**
15  EQUILON ENTERPRISES, LLC, dba SHELL  )   **DEFINITE STATEMENT**
    OIL PRODUCTS US; CITIBANK (SOUTH     )
16  DAKOTA), N.A.,                       )   **[F.R.C.P. 12(b)(6), 12(e), and 9(b)]**
                                         )
17                        Defendants.    )   Complaint filed: April 10, 2008
                                         )
18                                       )   Date:          September 2, 2008
                                         )   Time:          10:30 a.m.
19  ──────────────────────────────────       District Judge: Hon. Thomas J. Whelan
                                             Magistrate Judge: Hon. Anthony J. Battaglia
20                                           Trial Date:    Not Set

21                                           **[NO ORAL ARGUMENT PURSUANT TO**
                                             **LOCAL RULE]**
22

23  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24         Plaintiff, Samuel St. James, hereby opposes Defendant, Equilon Enterprises, LLC's

25  Motion to Dismiss First Amended Complaint, and requests that the Court deny Defendant's

26  Motion. In the alternative, Plaintiff requests that the Court grant leave to amend any causes of

27  action so dismissed in his First Amended Complaint (hereinafter FAC), pursuant to F.R.C.P.

28  15(a).

In its Notice of Motion filed with this court on August 5, 2008, Defendant moved for dismissal of Plaintiff's Second, Third, Fifth, Seventh, Eighth and Ninth Causes of Action set forth in Plaintiff's FAC, pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted; and, to dismiss Plaintiff's Sixth Cause of Action for failure to plead fraud with particularity, as required by F.R.C.P. 9(b). Defendant also moved the Court for a more definite statement of Plaintiff's causes of action pursuant to F.R.C.P. 12(e) if the Court is not inclined to grant its Motions to Dismiss.

On the following grounds, the Court should dismiss Defendant's Motion.

1. Plaintiff's Second Cause of Action, Bad Faith Breach of Contract, is not subject to dismissal because (1) Plaintiff alleges ample facts through incorporation (see paragraph 21 of FAC) to sustain allegations that Defendant breached the relevant Contractor Agreement (hereinafter "the Agreement") between the parties; and, (2) Article 1 of the Agreement contains both procedural and substantive elements of unconscionability, hence reference to the Agreement in this manner is not "vague" as alleged by Defendant. In the event the Court is inclined to dismiss this cause of action, Plaintiff respectfully requests leave to amend pursuant to F.R.C.P. 15(a).

2. Plaintiff's Third Cause of Action, Unjust Enrichment, is not subject to dismissal, because Defendant received the benefit of Plaintiff's efforts, and unjustly retained those benefits after the termination of the Agreement. In the event the Court is inclined to dismiss this cause of action, Plaintiff respectfully requests leave to amend pursuant to F.R.C.P. 15(a).

3. Plaintiff's Fifth Cause of Action, Constructive Trust Arising From Breach of Fiduciary Duty, is not subject to dismissal because despite the stated terms of the Agreement, Plaintiff operated in partnership with Defendant over several years in building a substantial account base. In the event the Court is inclined to dismiss this cause of action, Plaintiff respectfully requests leave to amend this cause of action, pursuant to F.R.C.P. 15(a).

4. Plaintiff's Sixth Cause of Action, Fraud and Request for Constructive Trust, is not subject to dismissal because Plaintiff pled this claim with as much specificity as was available prior to discovery, pursuant to F.R.C.P. 9(b).

5. Plaintiff's Seventh Cause of Action, Negligence, is not subject to dismissal, as it is not "duplicative" of his contract claims, as alleged by Defendant. In the event the Court is inclined to dismiss this cause of action, Plaintiff respectfully requests leave to amend pursuant to F.R.C.P. 15(a).

6. Plaintiff's Eighth Cause of Action, "Interference with Prospective Business Advantage" is not subject to dismissal because Defendant had every reason "to interfere with its own contract" to deprive Plaintiff of funds, and Plaintiff set forth sufficient facts to sustain this cause of action. However, in the event the Court is inclined to dismiss this cause of action, Plaintiff respectfully requests leave to amend pursuant to F.R.C.P. 15(a).

7. Plaintiff's Ninth Cause of Action, Unfair Business Practices, is not subject to dismissal because the Texas statute to which Defendant refers does not apply in this action, and because Plaintiff alleges sufficient facts to sustain this cause of action. In the event the Court is inclined to dismiss this cause of action, Plaintiff respectfully requests leave to amend pursuant to F.R.C.P. 15(a).

Opposition to Defendant's Motion to Dismiss First Amended Complaint, etc., is based on this Notice of Opposition, the Memorandum of Points and Authorities submitted herewith, any pleadings and records on file with this Court, and on any oral and documentary evidence as may be presented at the hearing on Defendant's Motion.

Dated: August 18, 2008

/s/ Elliott N. Kanter
ELLIOTT N. KANTER
ekanter1@san.rr.com
Law Offices of Elliott N. Kanter APC
2445 Fifth Avenue, Suite 350
San Diego, CA 92101
Attorney for Plaintiff SAMUEL ST. JAMES

Case No. 08 CV 0962 W (AJB)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

ELLIOTT N. KANTER, ESQ.
LAW OFFICES OF ELLIOTT KANTER
2445 5TH AVENUE, SUITE 350
SAN DIEGO, CA 92101
TELEPHONE 619-231-1883
FACSIMILE 619-234-4553

Attorney for Plaintiff SAMUEL ST. JAMES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL ST. JAMES,<br><br>Plaintiff,<br><br>vs.<br><br>EQUILON ENTERPRISES, LLC, dba SHELL OIL PRODUCTS US; CITIBANK (SOUTH DAKOTA), N.A.,<br><br>Defendants. | Case No.: 08 CV 0962 W (AJB)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EQUILON ENTERPRISES LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT**<br><br>**[F.R.C.P. 12(b)(6), 12(e), and 9(b)]**<br><br>Complaint filed: April 10, 2008 |

Date:            September 2, 2008
Time:            10:30 a.m.
District Judge:  Hon. Thomas J. Whelan
Magistrate Judge: Hon. Anthony J. Battaglia
Trial Date:      Not Set

**[NO ORAL ARGUMENT PURSUANT TO LOCAL RULE]**

## I.

## <u>INTRODUCTION</u>

Plaintiff, Samuel St. James, is a salesman who worked for Shell Oil from June 1996 to the date of termination, May 31, 2007. Plaintiff remained with Shell after its merger with Texaco, and its rechristening as Equilon Enterprises, LLC, (Defendant herein), on or about 1999.

1   During his tenure with Shell, Plaintiff sold Shell's corporate fleet account credit card services to

2   corporate clients, at first in San Diego County; and then from 2000 to 2002, in San Diego and

3   Orange Counties, and in Phoenix, Arizona; and then from late 2002 to May 2007,  throughout

4   the country.  From June 1996 until July 2001, Plaintiff was compensated on a salary and

5   expenses basis, which paid him approximately $160,000 for the final year of that contract.  From

6   July 2001 on, Plaintiff was compensated on a cents-per-gallon commission-only structure, based

7   upon a sales code from the credit cards as administered by defendant Citibank.  Plaintiff was

8   presented with the initial $.04 cents-per-gallon compensation contract on a take-it-or-leave-it

9   basis; he had no option to reject that package and still remain with the company.  This

10  compensation arrangement proved to be difficult to enforce, as Citibank frequently failed to enter

11  customer data into its system such that sales could be charged against the customer's account,

12  and then credited to Plaintiff for compensation.  Plaintiff believes that Defendant did not address

13  the issue of administrative inefficiency with Citibank, for reasons as yet unknown.

14          In June 2003, Defendant's sales manager, Steve Brommer, informed Plaintiff that his

15  commission would be cut forthwith to $.035 per gallon.  Plaintiff was not offered any flexibility

16  in negotiating this commission structure.

17          In late February 2005, Defendant presented Plaintiff with its latest "Contractor

18  Agreement" (hereinafter "the Agreement") which is the subject of this litigation.  The Agreement

19  provided Plaintiff with $.03 per gallon as the basis of his compensation, again with no base

20  salary or expenses.  In addition, the Agreement set forth a sales territory that included Southern

21  California, when in fact by then Plaintiff was selling fleet card services to major accounts

22  throughout the country, with Defendant's knowledge and encouragement.   Knowing that he had

23  no choice but to accept the Agreement or to leave his job, Plaintiff agreed, and the Agreement

24  became effective March 1, 2005.

25          Plaintiff then experienced the same difficulty working with Equilon and Citibank to get

26  accounts serviced properly.  Plaintiff repeatedly provided his superiors employed by Defendant

27  with examples of lost billing opportunities, and lost accounts, due to Citibank's administrative

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1    errors.  Plaintiff lost substantial commissions, and Defendant lost several fleet card customers,

2    due to these errors.  Yet Defendant did not terminate its relationship with Citibank.

3       On May 31, 2007, Defendant terminated the Agreement, and subsequently paid Plaintiff

4    for three months of commissions.  Plaintiff then brought this suit in California Superior Court

5    against both Equilon and Citibank.  Defendant Equilon then removed this case to United States

6    District Court in May of 2008, and filed its first Motion to Dismiss.  Plaintiff then filed its First

7    Amended Complaint (hereinafter "FAC"), and Defendant then filed another Motion to Dismiss,

8    to which this Opposition pertains.

9    **II.**

10   **LEGAL STANDARD**

11      The Federal Rules of Civil Procedure require that "[e]ach averment of a pleading shall be

12   simple, concise, and direct." F.R.C.P. 8(e)(1).  Allegations set forth in a complaint must be

13   "short and plain." *Swierkewicz v. Sorena N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 998 (2002). "A

14   complaint is not required to allege all, or *any,* of the facts entailed by the claim." *Bennett v.*

15   *Schmidt,* 153 F.3d 111, 1115 (7th Cir. 1998).  A complaint need only provide "fair notice" of a

16   claim and the grounds on which it rests, so that opposing parties can respond, undertake

17   discovery, and prepare for trial. *Conley v. Gibson,* 355 U.S. 41, 47-48, 78 S.Ct. 99, 103 (1957).

18      In its Memorandum of Points and Authorities filed with this Court on August 5, 2008,

19   Defendant set forth the legal standard underpinning an F.R.C.P. 12(b)(6) motion to dismiss.  (See

20   citations in Defendant's Memorandum of Points and Authorities, page 3, lines 6-22.)  Pleadings

21   are construed liberally in favor of the pleader; and in challenging the sufficiency of a complaint,

22   all of its material allegations are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421; 89

23   S.Ct. 1843, 1849 (1969).  "The motion to dismiss for failure to state a claim is viewed with

24   disfavor and is rarely granted." *Gilligan v. Jameco Development Corp.,* 108 F.3d 246, 249 (9[th]

25   Cir. 1997).  A Rule 12(b)(6) motion will not be granted merely because plaintiff requests a

26   remedy to which he is not entitled, "as long as the court can ascertain from the face of the

27   complaint that *some* relief can be granted." *Doe v. U.S. Department of Justice* 753 F.2d 1092,

28   1104 (D.C. Cir. 1985).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1    Defendant also set forth the legal standard for its alternative Motion for More Definite

2    Statement, pursuant to F.R.C.P. 12(e).   (See citations in Defendant's Memorandum of Points

3    and Authorities, page 8, lines 2-17.)  But if the detail sought by the motion for more definite

4    statement is obtainable through discovery, the motion should be denied.  *Beery v. Hitachi Home*

5    *Electronics (America) Inc.,* 157 FRD 477 (CD Calif. 1993).

6    A F.R.C.P. 12(b)(6) motion to dismiss for failure to state a claim is a nonwaivable

7    defense, that is, it need not be raised prior to a defendant filing an answer; and, it can be raised

8    through trial. F.R.C.P. 12(h)(2).

9                                    **III.**

10                                **ARGUMENT**

11    **A.  DEFENDANT REQUESTS AN UNNECESSARY LEVEL OF DETAIL.**

12    One of the recurrent themes of Defendant's Motion is the allegation that Plaintiff's FAC

13    does not provide enough of a factual basis for his claims, and as such is vague and ambiguous.

14    However, Plaintiff is not required to plead facts in detail to support his claims – only the "simple,

15    concise and direct" averments required by F.R.C.P. 8(e)(1). Even in its current allegedly "vague"

16    format, Plaintiff's FAC is ten (10) pages.  Apparently Defendant believes it requires a Complaint

17    with the factual detail the equivalent of a trial brief. Such detail is not required by the Federal

18    Rules, and indeed is discouraged by ample supporting case law.

19    In addition, Plaintiff included an incorporation clause beginning with his Second Cause

20    of Action, so that facts asserted in prior claims need not be restated.  This apparently eluded

21    Defendant.  For example, in arguing for dismissal of Plaintiff's Second Cause of Action for "Bad

22    Faith Breach of Contract," Defendant stated, "Preliminarily, and perhaps most obviously,

23    Plaintiff's claim does not allege facts indicating Equilon breached any agreement, let alone in

24    bad faith." (Defendant's Memorandum of Points and Authorities, page 5, lines 23-24.)  Yet

25    paragraph 21 Plaintiff's FAC, which is entered under the caption for the Second Cause of

26    Action, states clearly, "Plaintiff hereby incorporates each and every foregoing paragraph as

27    though set forth fully herein."  Those foregoing paragraphs include Plaintiff's First Cause of

28    Action, which allege Defendant's breach of contract.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1    Plaintiff contends that his Complaint and subsequent FAC contain sufficiently pled

2  allegations such that the case can move forward to the discovery phase.  For this reason, Plaintiff

3  asks that the Court dismiss Defendant's Motion to Dismiss.  In the alternative, Plaintiff requests

4  leave to amend his Complaint, pursuant to F.R.C.P. 15(a).

5

6  **B.  PLAINTIFF WOULD REQUIRE INFORMATION OBTAINED THROUGH DISCOVERY IN ORDER TO ADEQUATELY RESPOND TO DEFENDANT"S MOTION.**

7

8    Plaintiff cannot provide the level of factual detail Defendant desires because Plaintiff has

9  not yet had an opportunity to conduct discovery.  Plaintiff is a sole individual, a salesman,

10  whereas Defendant Equilon is the corporate result of the merger of Shell Oil and Texaco (the

11  other defendant is Citibank).  It is simply unrealistic to expect a single individual like Plaintiff to

12  possess the amount of information to be able set forth a factually detailed list of charges against

13  two of the world's largest corporations without the legal basis to conduct the discovery necessary

14  to obtain said information.  The Federal Rules concerning brevity of pleadings in F.R.C.P. 8

15  were no doubt drafted in part to provide litigants of modest means access to the legal system so

16  that they could then demand the information necessary to sustain (or suffer defeat for) their

17  claims from more affluent and/or powerful opponents.

18    Plaintiff contends that his FAC as currently drafted contains sufficient information to

19  allow the case to proceed to the discovery phase.  If during the discovery phase it becomes

20  apparent that some or all of Plaintiff's causes of action lack merit, Defendant can still bring a

21  12(b)(6) Motion to Dismiss.  The prejudice cause to Plaintiff in granting this Motion, then,

22  significantly outweighs any possible burden to Defendant to have to produce documents and

23  attend depositions pursuant to discovery requests.

24    Accordingly, for these reasons as well, Plaintiff asks that the Court dismiss Defendant's

25  Motion to Dismiss.

26  **C. DEFENDANT'S ALLEGATIONS FOUNDATIONALLY DEFECTIVE.**

27    Defendant sets forth the foundationally defective allegation that the Agreement in

28  question in this case "was entered into at arms length by sophisticated parties . . ." (See

1    Defendant's Memorandum of Points and Authorities, page 6, line 6.)  Defendant has no basis for

2    asserting either that Plaintiff is a sophisticated party, or that the Agreement was entered into at

3    arm's length.  Plaintiff's sophistication *vel non,* and whether the Agreement was arm's length in

4    character, are issues for trial, or at the very least determination following discovery, not for

5    objectionable assumptions to sustain pre-trial dismissal motions.

6

7    ### D.  THE COURT SHOULD APPLY CALIFORNIA LAW TO REVIEW THE LEGAL VALIDITY OF ANY TERM OF THE AGREEMENT.

8    Defendant asserts that the *Nedlloyd* rule for choice of law provision applies here

9    (*Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459 (1992)), and therefore the Court should

10   apply Texas law when reviewing whether disputed claims should be dismissed.  Defendant adds

11   that "whether application of the chosen law would contravene any strong or fundamental

12   California public policy" is the particular *Nedlloyd* standard the Court should use, and even "[t]o

13   the extent Plaintiff has pled legally cognizable claims, such claims are afforded relief under

14   Texas law in a manner that is not fundamentally different than under California law."

15   (Memorandum of Points and Authorities, page 4, lines 27-28, and page 5, lines 1-3.)  But then

16   Defendant proceeds to apply Texas law to several claims to argue for dismissal on grounds that

17   would not apply in California, as follows:

18       1)  With reference to Plaintiff's Second Cause of Action, Defendant argues that there is

19           no Duty of Good Faith and Fair Dealing in Texas;

20       2)  With reference to Plaintiff's Fifth Cause of Action, Defendant cited Texas law to

21           argue that no fiduciary duty can apply to Plaintiff pursuant to the terms of the

22           Agreement;

23       3)  With reference to Plaintiff's Seventh Cause of Action, for Negligence as applied to

24           both defendants, Defendant cites a Texas case that held that liability can only sound

25           in contract, not in negligence;

26       4)  With reference to Plaintiff's Ninth Cause of Action, for Unfair Business Practices,

27           Defendant cites the Texas Deceptive Trade Practices – Consumer Protection Act,

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1    which Defendant claims only applies to consumer transactions, not to employment or

2        partnership dealings.

3        One can conclude that Defendant believes that the lack of a duty of good faith and fair

4    dealing, the inapplicability of a fiduciary duty to one with whom one is in a working relationship,

5    the inability to prosecute a negligence action against one with whom one had a contractual

6    relationship, and the lack of applicable unfair business practices protection make Texas law "not

7    fundamentally different" from California's.  Plaintiff respectfully disagrees, and hereby requests

8    that the Court apply California law to this case.

9

10    **E.  THE AGREEMENT WAS UNCONSCIONABLE INSOFAR AS IT ALLOWED
       DEFENDANT TO DELETE MARKETS UNILATERALLY.**

11        As stated above, Plaintiff is a sole individual of relative lack of sophistication (salesman)

12    who entered into a contract with one of the world's largest corporations.  The disparity in

13    bargaining power between the parties could not be a more stark example of "procedural"

14    unconscionability.  Moreover, that Defendant could delete markets (pursuant to Article 1 of the

15    Agreement) that Plaintiff spent considerable resources and skill nurturing over several years,

16    with only mere notice to Plaintiff, thereby depriving Plaintiff of substantial income, demonstrates

17    the "substantive" unconscionability of the Agreement's relevant clause.  "Substantive

18    unconscionability focuses on the actual terms of the agreement, while procedural

19    unconscionability focuses on the manner in which the contract was negotiated and the

20    circumstances of the parties.  California courts generally require a showing of both . . . at the

21    time the contract was made." *American Software v. Ali*, 46 Cal.App. 4th 1386, 1390; multiple

22    citations.  At its core, unconscionability applies when "the weaker party had no meaningful

23    choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms."  (1

24    Witkin, Summary 10th (2005) Contracts, §331, p. 365.)  Under California's Civil Code §1670.5,

25    courts can refuse to enforce unconscionable contracts or parts thereof.

26        Here, from both a "procedural" and "substantive" aspect, the Agreement contains an

27    element of unconscionability insofar as market allocation is concerned.  Concerning those

28

1

2

markets, Plaintiff worked several outside of those stated in Article 1 of the Agreement. That Article reads, in relevant part:

3

4

5

6

> "1. SCOPE. Contractor shall provide Fleet Card Solicitation Services ("Services") to Company in the following California Markets: LA County, San Bernardino, High Dessert [*sic*], Riverside, Ventura County, Santa Barbara, San Louis [*sic*] Obispo, Orange County, and San Diego ("Markets"). **Company may add or delete Markets to this Agreement by prior written notice to Contractor.**" [Emphasis added.]

7

8

9

10

11

12

However, as stated above, throughout the contractual period of the Agreement, Plaintiff worked nation-wide to sign up accounts for Defendant, *with Defendant's knowledge and encouragement.* Specifically, Defendant signed up major accounts in Arizona, Texas, Ohio, Florida, and several other states. Yet Defendant had the right to terminate Plaintiff's markets – either expressly or impliedly set forth – at its whim, despite Plaintiff's considerable efforts at setting up those markets.

13

14

15

16

17

18

19

20

21

22

23

A contrast with the cited *American Software* case is useful. In *American Software*, a sophisticated sales rep opted not to negotiate a clause concerning commissions she could earn following her employment with the company at the time her employment contract was executed. After she resigned, she sought commissions that the company earned from two of the major accounts she had worked. The Court of Appeals observed that she had the opportunity to negotiate different terms to her contract on an arms-length basis as other sales reps had done, and that in the case of her sales there would be follow-on work to service the accounts. The Court determined that there was nothing that would "shock the conscience" about her contract, and indeed that American Software was justified in retaining post-contractual commissions to compensate others who would need to work her accounts. *American Software, supra,* 46 Cal.App. 4th at 1391-1393.

24

25

26

27

By contrast, here Plaintiff had no ability to negotiate the terms of his take-it-or-leave-it contracts; and, there is no evidence that any follow-on work would need to be done to service credit card customers (absent negligent service by one of the defendants) thereby creating a burden on Defendant's subsequent employees.

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1   For these reasons, Plaintiff requests that the Court deny Defendant's Motion to Dismiss

2   his Second Cause of Action.

3

4   **F. DEFENDANT WAS UNJUSTLY ENRICHED BY RETENTION OF POST-CONTRACTUAL COMMISSIONS.**

5   The elements of an unjust enrichment claim are (1) receipt of a benefit, and (2) unjust

6   retention of that benefit at the expense of another. *Lectrodryer v. SeoulBank,* 77 Cal.App. 4th

7   723, 726 (2000). Procedurally, there is a split of authority as to whether one can plead unjust

8   enrichment as a cause of action (*Lectrodryer*), or whether it is merely "synonymous with

9   restitution" and no separate cause of action exists. *McBride v. Boughton,* 123 Cal.App. 4th 379,

10  387 (2004), citing *Melchior v. New Line Products, Inc.,* 106 Cal.A00. 4th 779, 793 (2003).

11  Here, Defendant received a benefit in the form of commissions Plaintiff earned on its

12  behalf. Defendant retained those benefits following Plaintiff's termination. Plaintiff contends

13  that at least one paragraph of the Agreement was unconscionable, hence unjust, and that there

14  may be other injustices concerning his termination that may come to light following discovery.

15  In any event, Plaintiff asks the Court to deny Defendant's Motion to Dismiss for these reasons as

16  well.

17  **G. PLAINTIFF CAN ALLEGE BREACH OF FIDUCIARY DUTY.**

18  Defendant claims that Plaintiff's allegations of breach of fiduciary duty are insufficient to

19  state a claim "as they directly contradict the very contract Plaintiff alleges governed his

20  relationship with Equilon." (Defendant's Memorandum of Points and Authorities, page 10, lines

21  23-25.) On the contrary, Plaintiff alleged in his FAC that a fiduciary relationship was in fact

22  formed between the parties as a result of Plaintiff's performance in compliance with the

23  Agreement, despite language Defendant cited disclaiming any intention on the part of Defendant

24  to form a partnership. Evidence of the existence of this partnership-in-fact is apparent from

25  Plaintiff's performance of his duties outside of the geographic area set forth in paragraph 1 of the

26  Agreement, at the encouragement of his superiors. California Corporations Code §16404's

27  duties of loyalty and care would then certainly apply to both parties.

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

Plaintiff requests that the Court deny Defendant's Motion concerning fiduciary duties, so that Plaintiff can conduct discovery shedding further light on this issue.

### H. PLAINTIFF'S FRAUD CLAIM IS AS SPECIFIC AS IS POSSIBLE PRIOR TO DISCOVERY, HENCE DEFENDANT'S MOTION SHOULD BE DENIED.

Defendant claims that Plaintiff's fraud claim does not fulfill the requirements of F.R.C.P. 9(b), hence should be dismissed. Specifically, Defendant claims, "Plaintiff fails to allege *when* and *where* the allegedly fraudulent statement was made . . ." (Memorandum of Points and Authorities, page 12, lines 10-11.)   Yet Plaintiff does state *when* the discussions concerning sales proceeds took place – during early 2005 leading up to the March 1, 2005 execution date of the Agreement. (Paragraph 48 of FAC.)

As for *where* the discussions took place, is Defendant really suggesting that to be F.R.C.P. 9(b) compatible, Plaintiff must state, for example, at which motel, and in which town at which he may have been staying each time he had a telephone conference with his manager Steve Brommer leading up to the Agreement's execution? Defendant cites no authority – nor can he – to sustain a claim that fraud must be pled with such detailed particularity. However, in suggesting such an absurd application of 9(b), Defendant indirectly concedes Plaintiff's point that this Motion should be denied so that the case can proceed to the discovery phase, wherein the documents establishing the fraudulent, tortious and contractually breaching actions of both defendants can be reviewed and ultimately placed in evidence.

### I. PLAINTIFF'S NEGLIGENCE CAUSE OF ACTION GOES BEYOND THE BREACH OF CONTRACT CLAIM.

Defendant mis-states Plaintiff's FAC when he claims that "it appears that Plaintiff is essentially alleging that Equilon's failure to pay him commissions somehow constitutes negligence." (Defendant's Memorandum of Points and Authorities, page 12, lines 26-27.)  In fact, Plaintiff claims that the administrative incompetence of *both* defendants ended up costing him commissions:  "The Defendants failed to properly provide for accurate and diligent servicing of Plaintiff's accounts, due to their faulty or tardy billing and other administrative procedures." (FAC, paragraph 57.)  This is not a claim of withholding or failing to pay

commissions. Rather, Plaintiff's claim of negligence is in addition to, and hence goes beyond, the breach of contract claim directed solely at Equilon. At this pre-discovery phase of the litigation, Plaintiff does not have enough information to state with certainty a dollar amount that the defendants cost him (or, for that matter, cost themselves), nor does he have the information necessary to claim a quantum of negligence that could be attributed to either defendant. However, his claim should stand, and the Court should deny Defendant's Motion concerning the negligence claim.

### J. PLAINTIFF'S CLAIM OF INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE SHOULD STAND, AND DISCOVERY SHOULD BE ALLOWED TO CLARIFY THE EXTENT OF THE VALIDITY OF HIS CLAIM.

As an alternative pleading to his Negligence claim – and, again, one that cannot be established with high degree of detail prior to discovery – is Plaintiff's claim that both defendants interfered with his prospective business advantage by disrupting the performance of the Agreement. Defendant's quote, "It is axiomatic within the context of a tortious interference with contract cause of action that a party to the contract cannot interfere with itself," ignores the thrust of this section of the FAC; namely, that defendants interfered with performance *to help themselves* at Plaintiff's expense.

For example, if during the discovery process Plaintiff learns that the defendants' periodic failure to attach his sales tracking code to his accounts occurred by design rather than incompetence, this would have an impact on whether a tortious interference cause of action could stand. Its impact could also be assessed concerning the "prospective" nature of any business advantage so harmed.

For these reasons, the Court should deny Defendant's Motion with respect to Plaintiff's Eighth Cause of Action.

/ / / /

/ / / /

/ / / /

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1

## K. PLAINTIFF'S CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICES SHOULD STAND.

In his Ninth Cause of Action concerning Unfair Business Practices, Plaintiff clearly states that Defendant gradually wedged him out of his markets. Specifically, Plaintiff states that Defendant took advantage of him, and his ignorance of the financial data, concerning the amount they would pay him for three months' of the Phoenix market. Unstated is Plaintiff's concern that the Phoenix market did not really close, nor did Defendant intend it to close.

California Business & Professions Code §17200 prohibits "unfair competition," which is defined broadly to include "any unlawful, unfair or fraudulent business act or practice." "Section 17200 does not require a plaintiff to establish that the defendant directly competes with plaintiff." *Lanard Toys Ltd. v. Novelty Inc.,* 511 F.Supp.2d 1020, 1029 (C.D. Cal., 2007).

Here, Plaintiff alleges several unfair and potentially unlawful acts by both defendants. Given his claims, the Court should deny Defendant's Motion concerning the Ninth Cause of Action.

### IV.

### CONCLUSION

For the reasons set forth above, the Court should deny Defendant's Motion to Dismiss First Amended Complaint.

Respectfully submitted,

Dated:  August 18, 2008

*/s/  Elliott N. Kanter*
ELLIOTT N. KANTER
*ekanter1@san.rr.com*
Law Offices of Elliott N. Kanter APC
2445 Fifth Avenue, Suite 350
San Diego, CA 92101
Attorney for Plaintiff SAMUEL ST. JAMES

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF CALIFORNIA | FOR COURT USE ONLY |
|---|---|

| TITLE OF CASE (Abbreviated):<br><br>SAMUEL ST. JAMES vs. EQUILON ENTERPRISES, LLC, et al. | |
|---|---|

| ATTORNEY(S) NAME AND ADDRESS:<br>Elliott N. Kanter, Esq. (SBN 95054)    Tel:  (619) 231-1883<br>LAW OFFICES OF ELLIOTT N. KANTER    Fax:  (619) 234-4553<br>2445 5th Avenue, Suite 350<br>San Diego, CA  92101 | |
|---|---|

| ATTORNEY(S) FOR:<br>Plaintiff, SAMUEL ST. JAMES | HEARING:  DATE-TIME-DEPT | CASE NUMBER<br>08 CV 0962 W (AJB) |
|---|---|---|

# CERTIFICATE OF SERVICE

I declare that I am employed with the law firm of Elliott N. Kanter, whose address is 2445 Fifth Avenue, Suite 350, San Diego California 92121.  I am not a party to the within cause, and I am over the age of 18 years.

Pursuant to USCIT R. 5 and Paragraphs 5 and 6 of Administrative Order 02-01 of the U.S. Court of International Trade, I caused service of the following document(s):

(1)    NOTICE OF OPPOSITION TO DEFENDANT EQUILON ENTERPRISES LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT [F.R.C.P. 12(b)(b), 12(e), and 9(b)]

(2)    PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EQUILON ENTERPRISES LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT [F.R.C.P. 12(b)(6), 12(e), and (9(b)]

**By electronic filing with the Clerk of the Court on August 19, 2008, using the CM/ECF System,** which will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in this case,  of which will include electronic service to the following:

WILSON PETTY KOSMO & TURNER, LLP
ROBIN A. WOFFORD
HUBERT KIM
550 West C Street, Suite 1050
San Diego, CA  92101

*Counsel for Defendant, EQUILON ENTERPRISES LLC dba SHELL OIL PRODUCTS US*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and was executed on August 19, 2008 at San Diego, California.

*/s/ Anita Kranzberg*_____
Anita Kranzberg