1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL ST. JAMES, | CASE NO.08-CV-00962 W (AJB) |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS (Doc. Nos. 12, 13)** |
| vs. | |
| EQUILON ENTERPRISES, LLC dba SHELL OIL PRODUCTS US; CITIBANK (SOUTH DAKOTA), N.A., | |
| Defendants. | |

This is a state law contract action between Plaintiff Samuel St. James ("Plaintiff") and Defendants Equilon Enterprises, L.L.C. dba Shell Oil Products US ("Equilon") and Citibank (South Dakota), NA ("Citibank"). On May 30, 2008, Equilon removed the

action pursuant to 28 U.S.C. § 1441.  Equilon now moves to dismiss several causes of action from Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim and 9(b) for failure to plead with particularity.

The Court decides the matter on the papers submitted and without oral argument.  <u>See</u> S.D. Cal Civ. R. 7.1(d.1).  For the reasons stated below, the Court **GRANTS** Defendants' Motion to Dismiss the FAC. (Doc. Nos. 12, 13.)

## I.   BACKGROUND

Equilon is a limited liability corporation, which formed from the merger of Shell Oil and Texaco in 1999. (*Pl.'s Opp'n Mem.* 1.)  Plaintiff is a salesman who began working for Shell Oil in June 1996, and remained with the company after the Texaco merger. (*Pl.'s Opp'n Mem.* 1.)  During his tenure with the company, Plaintiff sold Shell's corporate Fleet Credit Card Services to corporate clients throughout Southern California and Arizona. (*Pl.'s Opp'n Mem.* 2.)  Between  June 1996 and July 2001 Plaintiff was compensated on a salary and expenses basis. He made approximately $160,000 in his final year.  (*Pl.'s Opp'n Mem.* 2.)

In 2001 Plaintiff was presented with and accepted a new $.04 per gallon commission payment plan. (*Pl.'s Opp'n Mem.* 2.) In late February 2005, Equilon again changed its payment structure. (*Pl.'s Opp'n Mem.* 2.)  Thereafter Plaintiff signed a new fully-integrated "independent contractor agreement" and remained with the company. (*Def.'s Supp. Mem.* 1.)

The independent contractor agreement became effective March 1, 2005, and is the subject of this dispute. (*Def.'s Supp. Mem.* 1.)  The Agreement stipulated that Plaintiff, as he had in the past, would provide Fleet Credit Card Solicitation Services to various California markets. (*Pl.'s Opp'n Mem.* 2.)  The Agreement set forth a commission-based compensation plan in which Plaintiff would receive $.03 per gallon (with no base salary or expenses) based upon a sales code from the credit cards as

administered by Citibank. (*Pl.'s Opp'n Mem.* 2; *Def.'s Supp. Mem.* 2.)

The Agreement was for a one-year term, to be renewed automatically for successive one-year terms, unless terminated in accordance with its provisions. (*Def.'s Supp. Mem.* 2.) Specifically, paragraph 2 of the Agreement stated that, "[e]ither [Equilon] or [Plaintiff] may terminate this Agreement either in its entirety or for a particular market, at any time and for any reason or no reason at all, by giving the other at least two (2) days advance written notice." (*Am. Compl. Ex. A* ¶2.)  The Agreement further provided that should Equilon terminate the Agreement in one or more markets without cause, it would pay Plaintiff "three months worth of commissions . . . for the terminated market(s) based on the previous month's sales." (*Am. Compl. Ex. A* ¶3(b).)

On May 31, 2007, Equilon terminated the Agreement and subsequently paid Plaintiff for three months of commissions. (*Pl.'s Opp'n Mem.* 3.) Plaintiff then brought suit in California Superior Court against both Equilon and Citibank.  On May 30, 2008, Equilon removed the case to this Court.  On July 15, 2008, Plaintiff filed his First Amended Complaint alleging breach of contract, bad faith breach of contract, unjust enrichment, fraud, negligence, interference with prospective business advantage, unfair business practices and unlawful termination of franchise.  On August 1, 2008, Equilon filed this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  On August 19, 2008, Plaintiff opposed the motion.  On August 25, 2008, Equilon filed its reply brief with the Court.

## II.   LEGAL STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  "The purpose of a motion to dismiss under  Rule 12(b)(6) is to test the legal sufficiency of the complaint." North Star Int'l. v. Arizona Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). The Court must treat as true all factual allegations in the Complaint and must "construe them in the light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir.

1    2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir.

2    1996).  A motion under 12(b)(6) may be granted where the plaintiff cannot allege facts

3    sufficient to state a claim to relief that is plausible on its face.  Bell Atlantic Corp. v.

4    Twombly, 127 S.Ct. 1955, 1974 (2007).

5          As the Supreme Court recently explained, "[w]hile a complaint attacked by a

6    Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

7    obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

8    and conclusions, and a formulaic recitation of the elements of a cause of action will not

9    do." Id. at 1964.  Instead, the allegations in the complaint "must be enough to raise a

10   right to relief above the speculative level." Id. at 1964–65.  Conclusory allegations of law

11   and unwarranted inferences are insufficient to defeat a motion to dismiss.   Legal

12   conclusions need not be taken as true merely because they are cast in the form of factual

13   allegations.  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Ileto

14   v. Glock Inc., 349 F.3d 1191, 1200 (C.D. Cal. 2003).

15         Generally, the court may not consider material outside the complaint when ruling

16   on a motion to dismiss.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

17   1542, 1555 n.19 (9th Cir. 1990).  However, the court may consider any documents

18   specifically identified in the complaint whose authenticity is not questioned by the

19   parties.  Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995).  Moreover, the

20   court may consider the full text of those documents, even when the complaint quotes

21   only selected portions.  Id.

22

23   **III.   DISCUSSION**

24         **A.     Texas Law Governs this Dispute**

25         Equilon contends that, under the Agreement, Texas law governs this dispute.

26   (Def.'s Supp. Mem. 3–4.)  Paragraph 19 of the Agreement states: "This Agreement and

27   the performance hereunder shall be governed by the laws of the state of Texas, without

28   regard to the conflicts of laws principles therein."  (Am. Compl. Ex. A ¶19.)  Plaintiff

1  contends that, despite this language, California law should govern each of his claims.

2  (*Pl.'s Opp'n Mem.* 6.)

3      In determining the enforceability of arm's-length contractual choice-of-law

4  provisions, California courts apply the principles set forth in Restatement (Second)

5  Conflict of Laws Section 187, which reflects a strong policy favoring enforcement of

6  such provisions. Nedlloyd Lines B.V. v. Superior Court, 11 Cal. Rptr. 2d 330, 331–333

7  (Cal. 1992). A choice of law clause "encompasses all causes of action arising from or

8  related to [an] agreement, regardless of how they are characterized." Id. at 336–337.

9      The proper approach under Restatement Section 187, subdivision (2) is for the

10  court first to determine either: (1) whether the chosen state has a substantial

11  relationship to the parties or their transaction, or (2) whether there is any other

12  reasonable basis for the parties' choice of law. Nedlloyd, 11 Cal. Rptr. 2d at 334–335.

13  If neither of these tests is met, that is the end of the inquiry, and the court need not

14  enforce the parties' choice of law. Id. If, however, either test is met, the court must

15  next determine whether the chosen state's law is contrary to a *fundamental* policy of

16  California. Id. If there is no such conflict, the court shall enforce the parties' choice of

17  law. Id.

18      If, however, there is a fundamental conflict with California law, the court must

19  then determine whether California has a "materially greater interest than the chosen

20  state in the determination of the particular issue . . ." Restatement (Second) Conflict

21  of Laws § 187(2)(1971). If California has a materially greater interest than the chosen

22  state, the choice of law shall not be enforced, for the obvious reason that in such

23  circumstance the court will decline to enforce a law contrary to this state's fundamental

24  policy. Nedlloyd, 11 Cal. Rptr. 2d at 334–335.

25      Here, the Agreement specifically states that the Agreement and performance

26  thereunder "shall be governed by the laws of the State of Texas, without regard to the

27  conflicts of laws principles therein." (*Am. Compl. Ex. A* ¶19.) Because Equilon's

28  principal place of business is located in Houston, Texas, "the chosen state" has a

substantial relationship to the parties and their transaction.   Hence, there is a reasonable basis for the parties' choice of Texas law.

The Court must next determine whether Texas law is contrary to the fundamental policy of California.  Plaintiff fails to argue how Texas law contravenes California's fundamental policy, and further fails to point out how California has a materially greater interest than Texas in determining this case's issues.  Rather, Plaintiff simply makes a vague call for California law to govern.

This Court finds that Plaintiff's claims can be afforded relief under Texas law in a manner that is not *fundamentally* different than under California law.  Accordingly, the Agreement's choice of law provision is upheld and the dispute will be governed by the laws of Texas.  Because a choice of law clause encompasses all causes of action arising from an agreement, each cause of action alleged by Plaintiff is governed by Texas law.

**B.   Equilon's Actions Do Not Amount to a Bad Faith Breach of Contract**

Plaintiff's second cause of action is for "bad faith breach of contract."[1]  Equilon contends that it had no duty to act in good faith and thus Plaintiff has failed to state a claim upon which relief can be granted. (*Def.'s Supp. Mem.* 6.) Plaintiff argues, however, that despite language in the Agreement to the contrary, a fiduciary relationship was formed between Plaintiff and Equilon that created a duty of good faith. (*Pl.'s Opp'n Mem.* 6–7.)

The duty of good faith and fair dealing does not exist in Texas unless intentionally created by express language in a contract or unless a special relationship of trust and confidence exists between the parties to the contract. Lovell v. Western Nat'l Life Ins. Co., 754 S.W.2d 298, 302 (Tex. Ct. App. 1988). To impose an informal fiduciary duty in a business transaction, the requisite special relationship of trust and

_____

[1]The Court notes Plaintiff's claim of unconscionability. However, California courts generally require a showing of both substantive and procedural unconscionability at the time the contract was made. American Software v. Ali, 54 Cal.Rptr. 2d 477, 479–480 (Cal. Ct. App. 1996).  On their face Plaintiff's allegations do not rise to this level.

1   confidence must exist prior to (and apart from) the agreement that is the basis of the

2   suit.   Associated Indem. Corp.v. CAT Contracting Inc., 964 S.W.2d 276, 288 (Tex.

3   1998); Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 177 (Tex. 1997).

4          The fact that a business relationship has been cordial and of extended duration

5   is not by itself evidence of a confidential relationship. Four Bros. Boat Work, Inc. v.

6   Tesoro Petroleum Companies, Inc., 271 S.W.3d 653, 669 (Tex. 2006).  Likewise, the

7   fact that one businessman trusts another and relies on him to perform a contract does

8   not give rise to a confidential relationship. Crim Truck & Tractor Co. v. Navistar

9   Intern. Transp. Corp., 823 S.W.2d 591, 594 (Tex. 1992).  Subjective trust is simply not

10  sufficient to transform an arms-length transaction into a fiduciary relationship.

11  Schlumberger Tech. Corp., 959 S.W.2d at 177.

12         To determine the existence of a confidential or fiduciary relationship, a court

13  must examine the actualities of the relationship between the parties involved. Four

14  Bros., 271 S.W. 3d at 670.  Although the existence of a confidential relationship can be

15  a question of fact, where there is no evidence to establish the relationship, it is a

16  question of law. See Miller-Rogaska, Inc. v. Bank One, Texas N.A., 931 S.W.2d 655,

17  663 (Tex. Ct. App. 1996) (citing Crim Truck & Tractor Co., 823 S.W.2d at 594).

18         Here, the Agreement does not expressly provide for a duty of good faith and fair

19  dealing.  Therefore, the Court must look to whether a special relationship existed

20  between the parties at the time of the alleged breach.

21         The Agreement expressly sets forth the nature of Plaintiff' relationship to Equilon

22  as that of an independent contractor. (Am Compl. Ex. A ¶4(a).)  The Agreement does

23  not create "the relation of employer and employee . . . any type of partnership

24  relationship . . . a franchise relationship under the Federal Petroleum Marketing

25  Practices Act . . . or any joint venture." (Am. Compl. Ex. A ¶4(a).)

26         While the Court must construe the pleadings in the light most favorable to

27  Plaintiff, and he need not provide detailed factual allegations, his obligation to provide

28  the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions. Bell

-7-

1   Atlantic, 127 S.Ct. at 1964.  Because Plaintiff has offered no evidence to establish a
2   special relationship, the Court finds as a matter law no such relationship existed.  See
3   Miller-Rogaska, Inc., 931 S.W.2d at 663.

4        Although Plaintiff may have trusted and relied on Equilon to perform its duties
5   under the contract, subjective trust is insufficient to create a fiduciary relationship out
6   of an arms-length business transaction.  Accordingly, the Court **GRANTS** Equilon's
7   Motion to Dismiss as to Plaintiff's second and fifth causes of action, "bad faith breach
8   of contract" and "constructive trust arising from a breach of fiduciary duty"
9   respectively.[2]

10

11       **C.**    **Plaintiff Fails to State a Claim for Unjust Enrichment**

12        Plaintiff's third cause of action is for unjust enrichment.  Plaintiff claims that
13   Equilion is "still benefitting from and receiving income from the work that Plaintiff did
14   in soliciting and signing on companies for the Shell Credit Card Services," therefore
15   being unjustly enriched. (*Am. Compl.* ¶27.)  Equilon contends that it was merely
16   exercising its rights under the Agreement, and that Plaintiff's remedy cannot sound in
17   quasi-contract. (*Def.'s Supp. Mem.* 9.)  Plaintiff, in response, argues that Equilon's
18   actions amount to unjust enrichment under California law. (*Pl.'s Opp'n Mem.* 9.)

19        Recovery on the basis of unjust enrichment is recovery on a quasi-contract or a
20   contract implied in law.  Lone Star Steel Co. v. Scott, 759 S.W.2d 144, 154 (Tex. Ct.
21   App. 1988).  There can be no recovery on an implied contract if the same subject is
22   covered by an express agreement.  Truly v. Austin, 744 S.W.2d 934, 936 (Tex. 1988).

23        Further, the doctrine of unjust enrichment does not apply when the contractual
24   duty at issue has been performed.  Lone Star Steel, 759 S.W.2d at 154; Barrett v. Ferrel,
25   550 S.W.2d 138, 143 (Tex. Ct. App. 1977). The fact that a party to a contract has made
26   a profit is an insufficient ground on which to order restitution on a theory of unjust

27

28       [2]Because the Court dismisses, without prejudice, Plaintiff's second cause of action, it need not address Equilon's alternative motion for a more definite statement.

-8-   08 CV 00962 W (AJB)

enrichment. <u>City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.</u>, 736 S.W.2d 247, 250 (Tex. Ct. App. 1987)(writ denied). The doctrine does not operate to rescue a party from the consequences of a bad bargain, and the enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract. <u>See</u> <u>Harris v. Sentry Title Co.</u>, 715 F.2d 941, 949 (5th Cir.1983) (applying Texas law).

Here, the subject of the dispute is covered by the Agreement. It states, "[i]n the event that [Equilon] terminates this Agreement in one or all markets without cause, [Equilon] shall pay [Plaintiff] three (3) months worth of Commission. . . based on the previous months' sale of gallons in the market(s)." (*Am. Compl.* ¶3(b).)

Because the Agreement expressly covers the subject matter of the dispute, there cannot be recovery on an unjust enrichment theory. Further, Plaintiff's argument that Equilon's actions amount to unjust enrichment under California law is unavailing because, as discussed *infra*, this dispute is governed under the laws of Texas. Accordingly, the Court **GRANTS** Equilon's Motion to Dismiss as to Plaintiff' third cause of action.

### D.   <u>Plaintiff's Claims Sound in Contract</u>

Plaintiff's seventh cause of action is for negligence, contending that Equilon had a duty to "act reasonably for the care and safety of Plaintiff." (*Am. Compl.* ¶56.) Plaintiff alleges that Equilon breached that duty by failing to properly provide for accurate and diligent servicing of his accounts, causing him to lose  his interest in the commissions of the subject sale's proceeds. (*Am. Compl.* ¶¶57-58.)  Equilon contends that because the Agreement governs Plaintiff's commissions, Plaintiff is precluded from arguing  that Equilon's failure to pay him the commissions amounts to negligence. (*Def's Supp. Mem.* 12.)

Tort obligations are, in general, obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention

of the parties to avoid injury to others. <u>Southwestern Bell Tel. Co. v. Delanney</u>, 809 S.W.2d 493, 494 (Tex. 1991). If a defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. <u>Id.</u> Conversely, if the defendant's conduct gives rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. <u>Id.</u>

In determining whether the plaintiff may recover on a tort theory, it is instructive to examine the nature of the plaintiff's loss. <u>Id.</u> When the injury is only economic loss to the subject of a contract itself, the action sounds in contract alone. <u>Id.</u>

Because the only injury alleged is economic loss, which is the subject of the contract itself, Plaintiff's action must sound in contract alone. Plaintiff argues that the negligence claim "goes beyond[] the breach of contract claim," but the only injury alleged is "the loss of [Plaintiff's] interest in the commissions of the proceeds of subject sales." (*Pl.'s Opp'n Mem.* 10–11; *Am. Compl.* ¶58.) That is, Plaintiff alleges no conduct giving rise to liability independent of the Agreement existing between the parties. Accordingly, the Court **GRANTS** Equilon's Motion to Dismiss as to Plaintiff's seventh cause of action.

### E.    <u>Equilon Cannot Interfere With Its Own Contract</u>

Plaintiff's eighth cause of action is for interference with prospective business advantage[3]. Plaintiff alleges that Equilon "intended to and did disrupt the performance of the Agreement." (*Am. Compl.* ¶62.) Equilon argues that it cannot tortiously interfere with its own contract. (*Def.'s Supp. Mem.* 13.)

"It is well settled that one cannot tortiously interfere with one's own contract." <u>Husson v. Schwan's Sales Enterprises, Inc.</u>, 896 S.W.2d 320, 326 (Tex. App. 1995).

---

[3]The Court notes that there is no allegation of interference with any *future* business endeavor, and proceeds with its analysis of the claim as though it were a "tortious interference with contract" claim.

1    "Liability for tortious interference is founded only on the acts of an interfering third
2    party." Husson, 896 S.W.2d at 326.

3           Here, Equilon is a party to the Agreement at issue.  Because a party to a contract
4    cannot interfere with itself, Plaintiff's eighth claim against Equilon for interference with
5    prospective business advantage does not state a claim.   Accordingly, the Court
6    **GRANTS** Equilon's Motion to Dismiss as to Plaintiff's eighth cause of action.

7

8           **F.      Equilon's Actions Do Not Amount To Unfair Business Practices**

9           Plaintiff's ninth cause of action is for unfair business practices.  He alleges that
10   he was "wedged out of all his markets by Equilon, in that his commission rates and
11   territories were gradually reduced, and Plaintiff was ultimately terminated by
12   Equilon."(*Am. Compl.* ¶69.)  Additionally, Plaintiff argues that Equilon's actions are
13   unlawful under Section 17200 of the California Business & Professions Code which
14   broadly defines "unfair competition." (*Pl.'s Opp'n Mem.* 12.) Equilon argues that, under
15   Texas law, Plaintiff's allegations fail to state a claim for unfair business practices. (*Def.'s
16   Supp. Mem.* 14.)

17          Under Texas law, the Deceptive Trade Practices Consumer Protection Act
18   ("DTPA") is the primary vehicle by which a consumer can allege unfair business
19   practices.  See Tex. Bus & Commerce Code §17.41, *et seq.*  However, to be actionable
20   under the DTPA, a defendant's deceptive conduct must occur in connection with a
21   consumer transaction.  See Todd v. Perry Homes, 156 S.W.3d 919, 923 (Tex. Ct. App
22   2005).

23          As alleged in his FAC, Plaintiff's claims do not arise out a consumer transaction.
24   Rather, they arise out of the independent contractor relationship between Plaintiff and
25   Equilon as governed by the terms of the Agreement.

26          The Agreement's terms allow Equilon to "add or delete Markets to [the
27   Agreement] by prior written notice to Plaintiff." (*Am. Compl. Ex. A* ¶1.)  Further, the
28   Agreement states that, "[e]ither [Equilon] or [Plaintiff] may terminate this Agreement

1    in its entirety or for a particular Market, at any time and for any reason or no reason at
2    all[.]" (*Am. Compl. Ex. A* ¶2.) Accordingly, the Agreement's provisions governed
3    Equilon's actions. Because Equilon acted in accordance with those provisions, Plaintiff
4    cannot state a claim for unfair business practices.

5           Further, Plaintiff's emphasis on the California Business & Professions Code is
6    misplaced because this dispute, as discussed *infra*, is governed by Texas Law.   Because
7    Plaintiff cannot state a cause of action for unfair business practices under Texas law, the
8    Court **GRANTS** Equilon's motion to dismiss as to Plaintiff's ninth cause of action.

9

10       G.    <u>Plaintiff's Allegations Fail to Meet Rule 9(b)'s Heightened Pleading</u>
11             <u>Requirement</u>

12          Plaintiff's sixth cause of action is for "fraud and request for constructive trust."
13   Plaintiff alleges that he was told by Equilon executive Steve Brommer ("Brommer") that
14   Plaintiff would be paid all his commissions. (*Am Compl.* ¶47.) Plaintiff further alleges
15   that, at the time Brommer made that representation, Equilon had no intention of paying
16   Plaintiff his full interest. (*Am. Compl.* ¶49.)  Equilon contends that Plaintiff fails to
17   allege facts, such as when and where these representations were made, sufficient to
18   overcome the heightened pleading requirement set forth by Federal Rule of Civil
19   Procedure 9(b). (*Def.'s Supp. Mem.* 11.)

20          Complaints alleging fraud must meet the pleading requirements of Federal
21   Rule of Civil Procedure 9(b), which provides that "[i]n all averments of fraud or
22   mistake, the circumstances constituting fraud or mistake shall be stated with
23   particularity." FED. R. CIV. P. 9(b). Rule 9(b) thus imposes two separate requirements
24   on complaints alleging fraud.  First, a plaintiff must specifically identify the allegedly
25   fraudulent statements or acts of fraud. <u>Kaplan v. Rose</u>, 49 F.3d 1363, 1370 (9th Cir.
26   1994).  This requires the plaintiff to plead evidentiary facts including the dates, times,
27   places and person associated with each misrepresentation or act of fraud. <u>In re GlenFed,</u>
28   <u>Inc. Sec. Litig.,</u> 42 F.3d 1541, 1548–49 n.7 (9th Cir. 1994) (en banc) (superseded by

1    statute on other grounds); <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993).

2           Second, where the act of fraud is based on a misrepresentation, the plaintiff must

3    demonstrate that the statement was false or misleading at the time it was made.

4    <u>GlenFed</u>, 42 F.3d at 1549.  As the Ninth Circuit explained, "often there is no reason to

5    assume that what was true at the moment plaintiff discovers was also true at the

6    moment of the alleged misrepresentation, and that therefore simply because the alleged

7    misrepresentation conflicts with the current state of facts, the charged statement must

8    have been false."  <u>Id.</u> For this reason, "a plaintiff must set forth, as part of the

9    circumstances constituting fraud, an explanation as to why the disputed statement was

10   untrue or misleading *when made*, [which] can be done most directly by pointing to

11   inconsistent contemporaneous statements or information ... which were made by or

12   available to the defendants."  <u>Id.</u>

13          Here, Plaintiff fails to allege a specific time or place that the allegedly false

14   representations were made.  Rather, he simply states that Equilon's Motion "should be

15   denied so that the case can proceed to the discovery phase[.]" (*Pl.'s Opp'n Mem.* 10.)

16   However, the heightened pleading requirement set forth by Rule 9(b) is meant to

17   prevent the filing of a complaint as a pretext for the discovery of unknown wrongs.

18          Further, Plaintiff alleges Brommer misrepresented Equilon's intent to pay Plaintiff

19   his due commissions.  However, he fails to give an explanation as to why the disputed

20   statement was untrue or misleading *when made*.  For instance, he does not point to

21   inconsistent contemporaneous statements or information.  Therefore, The Court

22   **GRANTS** Equilon's Motion to Dismiss as to Plaintiff's sixth cause of action.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**IV.   CONCLUSION AND ORDER**

2          Thus, in light of the foregoing, the Court **GRANTS** Defendant's motion to

3   dismiss as to Plaintiff's second, third, fifth, sixth, seventh, eight, and ninth causes of

4   action. The Court **DISMISSES** these causes of action **WITHOUT PREJUDICE.**  If

5   Plaintiff wishes to amend his complaint to fix the deficiencies noted above he may do

6   so by October 15, 2008.

7

8          **IT IS SO ORDERED.**

9   DATED:  September 15, 2008

10

11

12                                    Hon. Thomas J. Whelan

13                                    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08 CV 00962 W (AJB)